KELLERMAN *et al.* v. KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

In Banc, December 1, 1896.

1. **Carrier:** BILL OF LADING: PRESUMPTION. A shipper of freight who signs a bill of lading is, in the absence of fraud or deceit, conclusively presumed to know its contents and to have assented thereto.

2. ———: ———: FREIGHT RATES. The schedule of railroad freight rates required by law to be established and posted in stations controls any shipment where no rate is fixed in the contract.

136   177
74a 413

136   177
149   324
77a 252
78a 645

136   177
87a   57

136   177
162   552

136   177
93a  1590

136   177
98a  1187
98a  1405
100a 3688

136   177
101a 3453
101a 1456
101a 3457

3. ———: ———: LIMITING VALUATION OF PROPERTY. A stipulation in a written contract of shipment placing a limited valuation on the property shipped in case of its loss by the default of the carrier, when not made in consideration of special or reduced rates of shipment, is not binding on the shipper.

4. ———: ———: ———: PAROL EVIDENCE. Parol evidence is admissible in such case to show the actual value of the property.

*Appeal from Nodaway Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Spencer & Mosman* and *W. W. Ramsay* for appellant.

(1) Plaintiffs are bound by the contract they voluntarily entered into and can not recover more than the agreed valuation. *Gwin v. Waggoner*, 98 Mo. 315.; *O'Brien v. Kinney*, 74 Mo. 137; *Railroad v. Cleary*, 77 Mo. 634; *Campbell v. Van Houton*, 44 Mo. App. 238; *Snider v. Ex. Co.*, 63 Mo. 376; *Brown v. Railroad*, 18 Mo. App. 573; *Rothschild v. Frensdorf*, 21 Mo. App. 321. (2) The cases hold that in the absence of fraud or mistake the terms of a contract duly executed by the party, will be enforced even where they omit a material portion of the agreement actually entered into, and agreed upon, in the preliminary consultation between the parties. *Morgan v. Porter*, 103 Mo. 135; *Christman v. Hodges*, 75 Mo. 413; *Snider v. Ex. Co.*, supra. (3) Contracts identical in every particular with the one at bar were sustained in *Harvey v. Railroad*, 74 Mo. 538; *Hart v. Railroad*, 112 U. S. 331. In England the consignor is bound by his declared valuation, and will not be permitted subsequently to show that the value of the goods exceeded the declared value. *McCauce v. Railroad*, 34 L. J. Exch. 39; Redman's Law of Railway Carriers [2 Ed.], p. 51; *Edwards v. Sharatt*, 1 East

604; *Batson v. Donovan*, 4 Barn. & Ald. 2; *Tichburne v. White*, 1 Strange, 145; *Keeney v. Eggleston*, — Aleyn, 93; *Tyly v. Morrice*, — Carth. 485; *Harris v. Packwood*, 3 Taunt. 264. There was an express agreement in the case at bar that the value of the bull was $50. This is not a case where the carrier by published notice, attempted to limit its liability to a certain sum in case of loss, but one where by a contract between the carrier and the shipper the value of the thing shipped was agreed upon, so that in case of loss, the damages became liquidated by the contract of the parties. It was specifically agreed that defendant should only be liable in case of loss to the extent of the value agreed upon between the parties. This was perfectly fair to both parties. The shipper could place any valuation on the bull over $50.

*E. A. Vinsonhaler* for respondent.

(1) There was no fraud or misrepresentation in the making of the contract. We contend that the tariff rate is not a reduced rate, but on the contrary it is the usual rate charged all shippers. *McFadden v. Railroad*, 92 Mo. 343. Not only must the rate be reduced in consideration of reduced valuation but the value must be fixed, so that, in case of liability on the part of the carrier the damages are liquidated. Here there was a general limitation on value only—and in case of loss the shipper would still have to prove value. *Doan v. Railroad*, 38 Mo. App. 408; *Conover v. Pacific Express Co.*, 40 Mo. App. 31; *Rogan v. Railroad*, 51 Mo. App. 665; *Eells v. Railroad*, 52 Fed. Rep. 903. (2) There was no error in showing who prepared the contract, nor in showing that nothing was said about value or rate. *McFadden v. Railroad*, 92 Mo. 343. (3) The evidence shows not only a case of negligence

but one of reckless indifference and gross negligence. (4)   The trial court's attention was directed entirely to the terms of the contract; counsel should not be permitted in the appellate court to change their theory of the case and enter upon the question of defendant's negligence, but should stand or fall within the lines they marked out in the trial court.   *Schlicker v. Gordon*, 19 Mo. App. 479.   (5)   Heat was agreed to be the cause of the bull's death.   Counsel now attempt to bring the cause within the exception set out in their printed contract, but this exception is based upon the consideration of free transportation of persons who should have charge of the stock.   In our contract this consideration was stricken out and such exception is not in the case.   And even if it was, it would not relieve the defendant from liability for its negligence. *Sturgeon v. Railroad*, 65 Mo. 569; *McFadden v. Railroad*, 92 Mo. 343.   (6)   The evidence was enough to show negligence.   *Ball v. Railroad*, 83 Mo. 574; *Witting v. Railroad*, 101 Mo. 651.   The negligence was gross and wanton and in such case it is against public policy to permit a limitation of the liability.   *Railroad v. Thomas*, 3 S. Rep. 802.   (7)   The contract is unreasonable.

### DIVISION TWO.

BURGESS, J.—Plaintiffs who were partners at the time of entering into the contract out of which this controversy arose, brought this suit against defendant to recover damages from it, as a common carrier, for the breach of a contract to transport from Maryville, Missouri, to Kansas City, Missouri, one bull.

In the circuit court plaintiffs recovered judgment from which said judgment defendant appealed to the Kansas City court of appeals, where the judgment was affirmed, but on dissent by one of the members of that

court the cause was certified to this court on the ground that the opinion of the court of appeals is in conflict with the decision of the supreme court.

The petition alleges that the value of the bull was $250, which defendant agreed, in consideration of the regular tariff rate per car to be paid to it by plaintiffs, to transport from Maryville to Kansas City, Missouri; that defendant never carried the bull to the place of destination nor was said bull ever delivered to plaintiffs, but had been wholly lost to them through the negligence of defendant.

Defendant answered denying that it had neglected to perform its duty as a common carrier in the transportation of the bull, and alleged that while transporting it with due care it died in the car while in transit, and for that reason was not delivered at the place of destination.

The answer further alleged that the animal was shipped under a special contract by which it was expressly agreed between plaintiffs and defendant that in case of loss of the bull its value should not exceed $50, whether such loss resulted from accident or negligence on the part of defendant, and that defendant did not assume a liability to exceed that sum.

By replication plaintiffs admitted that their agent signed a contract for shipment prepared by the agent of defendant, but plaintiffs state that such contract was prepared without any suggestion, statement, or word from them or their agent as to the value of said bull; that defendant did not enquire as to the value nor did plaintiffs fix it; that no agreement was made as to the rate based upon reduction; that the rate of freight was not fixed, but the same was to be fixed at destination.

The bull was transported under a bill of lading issued by defendant to plaintiffs, and signed by their agent for them, which reads as follows:

"KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS
RAILROAD.

"LIVE STOCK CONTRACT.

"Live stock in quantities less than a full car load,
will be charged for according to the company's sched-
ule of rates in effect from time to time.

"Live stock in car loads or less, will not be taken
unless this contract is executed by the company's agent
and the shipper.

"Different kinds of live stock must not be loaded
in the same car.

"Agents of this company are not authorized to
agree to forward live stock to be delivered at any
specified time, or for any particular market.

"Current rules will govern in passing owners or
their agents in charge of live stock.

"Parties so passed must ride in the caboose at-
tached to the train carrying the stock.

"Agents at stations where stock is loaded will give
no passes, but the name or names of the person or per-
sons who are ACTUALLY entitled to pass free with the
stock, must be entered in ink on the back of the con-
tract, *by the party himself*, which, when certified to by
the company's agent, is authority for conductor of
train to honor same.

"Draw a pen through lines not filled out.

"AGENTS WILL PERMIT ONLY THE NAMES OF THE OWN-
ERS OR BONA FIDE EMPLOYES WHO ACCOMPANY THE STOCK,
TO BE ENTERED ON THE BACK OF THE CONTRACT, WITHOUT
REGARD TO PASSES ALLOWED BY NUMBER OF CARS.

"The contract, when endorsed by the person in
charge, and signed in ink by agent, will entitle such
person or persons to ride on same train with stock to
care for same, but will not entitle holder of contract to

ride on any other train, nor will contract be accepted for passage on any passenger train.

"Conductor of freight train must punch contract, or in absence of punch, will endorse his name on back of contract when presented for passage.

"Live stock contracts are not good for return passage. Parties entitled to return passage will be provided with Drover's return tickets, on application to proper office. Conductors will be held strictly responsible for permitting persons to ride on stock contracts, except when in charge of live stock.

"An addition of 25 per cent. will be made to the rate for each 100 per cent. or fraction thereof, declared by the shipper to be the valuation of his live stock, above the valuation set forth below. And in no event shall the company be liable for loss of, or damage to said live stock, to an amount exceeding such declared valuation.

Kellerman v. K. C., St. J. & C. B. R'y Co.

| No. of Way-Bill. | No. of Car. | No. of Animals in each Car. |
|---|---|---|
| 121 | 9756 | 1 |
| | B. & M. | |

D. K. KELLERMAN & SON, MOUND CITY, KAS.

MARYVILLE STATION.

This contract, made and entered into this 20th day of July, A. D. 1892, by and between Bellows & Son, of Maryville, of the first part, and the Kansas City, St. Joseph & Council Bluffs Railroad Company, of the second part, WITNESSETH, that for and in consideration of tariff dollars per car, the said railroad company agrees to transport one car from Maryville to Kansas City, to be loaded with 1 bull, and in consideration thereof, the said first party agrees to deliver said property for shipment upon the above terms, it being hereby expressly agreed that the value of said live stock does not exceed the following valuation:

Each Horse (Gelding or Mare) or Pony, Mule, Stallion or Jack............$100
Each Ox or Bull................ ..... 50
Each Cow....... .................. 30
Each Calf...... ..... - ...... ... 10
Each Pig.... ..................... 10
Each Sheep or Goat................ 3

(When the declared valuation is greater than that specified above, the agent will erase the printed valuation, insert declared valuation and charge accordingly, noting such valuation on way-bill.) And that the above rate of transportation

is based upon the agreement that in case of loss or damage, whether resulting from accident or the negligence of said railroad company or its servants, said railroad company does not assume a liability for such loss or damage to exceed the said valuation for each animal.

Stock is to be loaded and unloaded, watered, and fed by the said first party or his agents.

Persons in charge of stock will not be permitted to ride in cars with stock.

And in consideration of free transportation for ..... persons, hereby given by said railroad company, such persons to accompany the stock, it is agreed that the cars containing stock of said first party are in sole charge of such person or his agents, for the purpose of attention and protection to the stock while in transit, and the company assumes no responsibility for safety to stock in charge of the shipper or his agents, whether from theft, heat, or cold, jumping from car, injury in loading and unloading, injury or damage which stock may do themselves, or which may arise from the rea-

sonable delay of trains, or from any other cause or accident or injury except those occurring by reason of gross negligence of the company.

In consideration of the rate and the privileges above named, it is further agreed by the shipper that no claim for damages that may accrue under this contract shall be valid against said railroad company unless a claim for such damage shall be made in writing, verified by affidavit, and delivered to the general freight agent of said railroad company at St. Joseph, Mo., or to the agent of the company at the station from which the stock is shipped, or to the agent of the railroad company at point of destination, within ten days from the time said stock is removed from said cars.

WITNESS, the name of the railroad company, by its duly authorized agent, and the signature of the shipper hereto, the day and year first above written.

THE KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILROAD CO.,

By P. W. MOORE, *Agent.*

FRANK BELLOWS & SON, *Shipper.*

For the purposes of the trial the following stipulation was entered into between the parties:

"It is agreed by and between the parties to this suit, that the following facts may be considered as admitted by both parties at the trial of this case.

"That on the twentieth day of July, 1892, the defendant, at its station at Maryville, Missouri, received of plaintiffs one thoroughbred bull, to be transported by the defendant over its railroad from Maryville to Kansas City, Missouri, as a common carrier.

"That said animal was tied in the end of the car, with the end and the side doors of the car left open for ventilation, the day being extremely warm.

"That such shipment was made by Frank Bellows & Son for the plaintiffs, under a contract of shipment then executed and signed by the parties, and which is hereto attached and made part hereof.

"That after said bull was loaded, the agents of the defendant in charge of said train, against the judgment and request of said Bellows & Son, closed the side doors and sealed them, the end doors remaining open. That when the car containing the bull reached St. Joseph, Missouri, the bull was found dead, and was there unloaded and not delivered at Kansas City, Missouri.

"That said bull was in good condition, as far as known, at the time of shipment, and no cause is known for its death, except the heat.

"Parties may introduce evidence not in conflict with the foregoing."

At the trial the plaintiffs were permitted to prove, over the objection of defendant, that, at the time of signing the bill of lading for the shipment of the bull, nothing was said about the value of the bull or the rate of freight to be paid.

The evidence tended to show the bull to have been worth $225 at the time of the shipment.

The cause was tried by the court sitting as a jury. No declarations of law were asked or given. The judgment was for plaintiffs for the sum of $225.

As the petition alleged, "that, in consideration of the regular tariff rates per car to be paid, defendant agreed to transport said bull to the City of Kansas," and this averment was admitted in the answer, which stated that the regular tariff rate was agreed upon by the terms of the contract, it must, in the absence of an averment that the contract was obtained by fraud or deceit, be held that such was the contract of shipment entered into between the parties. Furthermore it has been repeatedly held by this court, that where a shipper, in the absence of fraud or deceit, signs a contract of shipment, he is conclusively presumed to know its contents, terms, and conditions, and to have assented thereto. *O'Bryan v. Kinney*, 74 Mo. 125; *St. Louis, etc., R'y Co. v. Cleary*, 77 Mo. 634; *Rice v. Railroad*, 63 Mo. 314.

In the absence of a fixed rate in dollars and cents for freight on the shipment of the bull being specified in the contract of shipment, the rate to be charged was the customary rates, such as were fixed by the schedules showing the rates for freight which the defendant had established and which were in force at the time upon the line of its road upon which the animal was shipped, copies of which schedules are required by section 2639, Revised Statutes, to be kept posted in every depot or station upon said road, in such place where the same can be conveniently inspected by every person interested in the same, and to be filed with the railroad commissioners of this state; and from the date of such filing, the rates and charges specified in such schedule, not being in excess of any statutory

maximum rates, become the established rates of such common carrier.

There is no averment in the pleadings that plaintiffs did not know what the tariff rates were, and, even if there was, it would not avail them anything, because they could not complain of that which they ought to have known, and by reason of their own negligence did not know. They could have easily ascertained defendant's rates by an examination of the schedule of rates, which were posted up in defendant's depot or station for the information and benefit of its patrons.

Under the agreed statement of facts the court was justified in finding against defendant on the ground of negligence. The vital question in the case, however, is as to the measure of damages which plaintiffs were entitled to recover.

As bearing upon this question the court, over the objection of defendant, permitted the plaintiffs to introduce parol evidence to the effect that there was nothing said between the contracting parties at the time of the shipment of the bull, and the execution of the contract of shipment or bill of lading, as to the rate of freight to be paid, or as to his value, and that the bull was then of greater value than the maximum value fixed by the bill of lading.

From the view we take of the case it is wholly immaterial whether there was anything said at the time of shipment as to the value of the bull or not, for whatever may have been said was merged in the printed contract, which must be taken, in the absence of fraud or mistake, as the sole evidence of the final agreement of the parties, as to every thing incorporated in it. *Long v. Railroad*, 50 N. Y. 76; *Snider v. Adams Ex. Co.*, 63 Mo. 377; *Grace v. Adams*, 100 Mass. 507; *Belger v. Dinsmore*, 51 N. Y. 166; *O'Bryan v. Kinney, supra.*

This evidence was competent for the purpose of fixing the *actual* value of the bull, which was not fixed by the bill of lading.

That a carrier may, by special or express contract, fairly and understandingly made, limit his common law liability and the shipper release the carrier from its obligation as insurer of his property is well settled law; but it is equally well settled that the carrier can not by any kind of agreement or contract exempt itself from losses accruing by reason of its own negligence.

The defendant could not have, by any sort of contract, limited its liability against its own negligence in the transportation of the bull, but it does not follow that it could not, by contract fairly entered into, for a valuable consideration, limit the amount of damages to be paid by it in consequence of any loss which the owners might sustain by reason of loss of, or injury to, the animal by the carrier's negligence.

It is difficult to see how a contract, by which it is expressly agreed that the value of an animal shipped does not exceed a certain sum, can in case of its injury, loss or death, by reason of the negligence of the carrier, be construed as a contract exempting the carrier from its common law liability for damages on account of its own negligence.

*Harvey v. Railroad*, 74 Mo. 538, was a suit for injuries to a horse while in transit over defendant's road and by special contract the horse was shipped at reduced rates, and if injured or killed his value fixed at $100. The court said: "We do not regard a contract limiting a right of recovery to a sum expressly agreed upon by the parties as representing the true value of the property shipped, as a contract, in any degree exempting the carrier from the consequences of its own negligence. Such a contract fairly entered into leaves the carrier responsible for its negligence, and simply

fixes the rate of freight and liquidates the damages.
This we think it is competent for the carrier to do.
And where the reduced value is voluntarily fixed by the
shipper, with a view of obtaining a low rate of freight,
without any knowledge on the part of the carrier that
the property was of greater value, it would be a fraud
upon the carrier to permit the shipper to recover a
greater sum than fixed by him.''

*Hart v. Railroad*, 112 U. S. 331, was an action for
damages against the defendant as common carrier for
breach of a contract to ship five horses, whose value by
agreement was fixed at not exceeding $200 each.   The
court said: ''The limitation as to value has no tendency
to exempt from liability for negligence.   It does not
induce want of care.   It exacts from the carrier the
measure of care due to the value agreed on.   The car-
rier is bound to respond in that value for negligence.
The compensation for carriage is based on that value.
The shipper is estopped from saying that the value is
greater.   The articles have no greater value, for the
purposes of the contract of transportation, between the
parties to that contract.   The carrier must respond for
negligence up to that value.   It is just and reasonable
that such a contract, fairly entered into, and where
there is no deceit practiced on the shipper, should be
upheld.   There is no violation of public policy.   On
the contrary, it would be unjust and unreasonable, and
would be repugnant to the soundest principles of fair
dealing and of the freedom of contracting, and thus in
conflict with public policy, if a shipper should be
allowed to reap the benefit of the contract if there is no
loss, and to repudiate it in case of loss.''

In a recent case in Rhode Island, *Ballou v. Earle*,
17 R. I. 441, where by express contract the value of
the package in controversy was fixed at $50 the court
quoted with approval from the *Hart* case the follow-

ing: "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage, if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract."

The same question was before the supreme court of Connecticut in *Coupland v. Railroad*, 61 Conn. 531, where the value of the horse in controversy was by express agreement fixed at $100. The court said (*loc. cit.* 545): "It is a rule established by some of the best authorities, and one which we recognize as expressing the law, that when a contract is fairly made between shipper and carrier agreeing on the valuation of the property carried, with the rate of the freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations of the property after a loss has occurred.

There were specified or reduced rates agreed upon in the *Hart* case, and the bill of lading fixed the value of the horses not exceeding $200 each. The decision in that case was based upon the express ground, that

the contract of shipment was fairly made by which the value of the property carried was agreed upon with the rate of *freight based* on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, that being a proper and lawful mode of securing a due proportion between the amount for which the carrier might be responsible, and the freight he receives.

In the case at bar it was expressly agreed that the value of the bull did not exceed $50.

It will be observed that in all the cases cited upon the question now under consideration, there was an express agreement as to the *value* of the property, or its *maximum value fixed at a specified amount in consideration for special or reduced rates*, while no reduced or special rates were contracted for in the case at bar, nor was the value of the bull fixed at a specified sum.

In *McFadden v. Railroad*, 92 Mo. 343, it was held that, "a stipulation in a written contract of shipment, placing a limited valuation on the property shipped in case of its loss by the default of the carrier, when not made in consideration of special or reduced rates of shipment, is not binding on the shipper." The same rule was announced in *Rogan v. Railroad*, 51 Mo. App. 665; *Duvenick v. Railroad*, 57 Mo. App. 550; *Conover v. Pacific Express Co.*, 40 Mo. App. 31.

Under these authorities we must hold that there was no consideration for the maximum value placed on the bull, and the contract in that respect void.

There is no pretence that the value of the bull was misrepresented by plaintiffs for the purpose of obtaining reduced rates on its shipment, or that any statement whatever was made with respect to its value at that time and as its maximum value was fixed at a sum not

exceeding $50, under the circumstances parol evidence was admissible for the purpose of showing its actual value, although it may have been above or below that amount. *McFadden v. Railroad, supra.*

Finding no error in the record which would justify a reversal of the judgment, it is affirmed. GANTT, P. J., and SHERWOOD, J., concur.

PER CURIAM.—The foregoing opinion of BURGESS, J., handed down in division number two, is adopted as the opinion of the court *in banc,* and the judgment of the Kansas City court of appeals is accordingly affirmed, BRACE, C. J., BARCLAY, GANTT, and MACFARLANE, JJ., concurring with BURGESS, J., therein; SHERWOOD and ROBINSON, JJ., dissenting.