## JOSEPH V. GEORGE v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Division One, November 25, 1908.*

1. **SHIPMENT OF STOCK: Reduced Rates: Delay.**  Where a shipper of stock sues a railroad company for damages due to delay in transportation and defendant sets up as a defense a contract of affreightment to the effect that the shipment was made at a reduced rate and in consideration thereof the carrier was not to be liable for any delay in transportation or delivery of the stock, it is not necessary to decide whether or not the carrier could avoid its common law liability, if the contract does not show that there was any reduced rate; and a contract containing a stipulation for a limited liability, but with the clause calling for a reduced rate left blank, does not show a reduced rate, or any consideration for the stipulated limited liability.

2. ————: ————: **Notice, Etc.**  The railroad company may by a reduction of rates reduce its liability for delay in transporting stock, and as a consideration for such reduced rate it may impose a condition in the affreightment contract that the stock is not bound to be transported or delivered within any particular time, that notice of loss or injury is to be given to the company or station agent before the stock is removed from the place of destination, that a failure to give such notice shall be a bar to a recovery, and that in case of loss the damages shall be limited to a certain sum for each head of stock.  But if there is no reduced rate or other valuable consideration to support such stipulations, none of these things, though written in the contract, signed by the shipper, is a part of the contract, and the company is liable just as if the contract had not contained any such stipulations or agreements.  A stipulation for notice, etc., is not binding on the shipper unless it is supported by a reduced rate or some other valuable consideration, and a failure to give such notice, if the shipper pays the full schedule tariff rate, does not bar a recovery by him.

3. ————: ————: **At Tariff Rate: Meaning.**  An affreightment contract reciting that the price charged for the transportation is "at the rate of ——— tariff ——— per cwt.," means that the shipment was at the regular schedule tariff rates, in the absence of evidence that the rate was in fact a reduced rate.

*Note.—Decided June 29, 1907.  Motion for rehearing filed, and continued from time to time to await the decision in McCully v. Railroad, 212 Mo. 1; then overruled, and opinion on motion filed November 25, 1908.

4. ———: **Return Ticket.** The statute (Sec. 1085, R. S. 1899), aiming to impose on a railroad company the obligation to furnish the shipper of carloads of stock free transportation to the place of shipment and return, .is, to the extent of the free return transportation. in violation of the 14th Amendment of the United States Constitution, and therefore void. [Following McCully v. Railroad, 212 Mo. 1.]

Appeal from Mercer Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED (*with directions*).

*M. A. Low* and *E. M. Harber* for appellant.

(1) A common carrier may, by reason of special or reduced rate, limit its common law liability. Oxley v. Railroad, 65 Mo. 629; Rice v. Railroad, 63 Mo. 314; Ketchum v. Express Co., 52 Mo. 390; Railroad v. Cleary, 77 Mo. 634; Read v. Railroad, 60 Mo. 199; Smith v. Railroad, 112 Mo. App. 610. The recitals of a contract of such reduced rate are prima-facie evidence of the truth of such recitals. McFadden v. Railroad, 92 Mo. 343; Harvey v. Railroad, 74 Mo. 538; Crow v. Railroad, 57 Mo. App. 135; Kellerman v. Railroad, 136 Mo. 177; Duvenick v. Railroad, 57 Mo. App. 550; Paddock v. Railroad, 50 Mo. App. 328; Wyrick v. Railroad, 74 Mo. App. 406; Myers v. Railroad, 96 S. W. 737. Unless such recitals are controverted by evidence they become conclusive. McFadden v. Railroad, supra; Hart v. Railroad, 112 U. S. 331. Where a special value is placed on property shipped by reason of reduced rate, and there is a recitation of such rate in the contract, signed by the parties, unless contradicted by evidence it is conclusive thereof, and it is valid and binding. Rogan v. Railroad, 51 Mo. App. 665; Wyrick v. Railroad, supra; Kellerman v. Railroad, supra; Com. Co. v. Railroad, 80 Mo. App. 168; Live Stock Co. v. Railroad, 100 Mo. App. 688; Myers v. Railroad, 96 S. W. 741. (2) There being no ques-

tion as to the validity of the contract and no pretense that any notice was given, it follows that the verdict should have been for the defendant as to all damages claimed by reason of the death and shrinkage of the hogs as well as by reason of the claimed decline in the market.    Smith v. Railroad, 112 Mo. App. 610; Thorp v. Tel. Co., 118 Mo. App. 398; Nichols-Shepherd & Co. v. Larkin, 79 Mo. 764; McCormick Harv. Co. v. Reacky, 100 Mo. App. 400; Bellows v. Railroad, 118 Mo. App. 500; Freeman v. Railroad, 118 Mo. App. 526; Railroad v. Patrick, 144 Fed. 632.

*Robinson & Woods* for respondent.

VALLIANT, P. J.—Plaintiff recovered judgment for $138.10, damages alleged to have been sustained by him on account of delays in delivering three carloads of hogs delivered to defendant for transportation.    The appeal comes here on the idea that a constitutional question is involved.    There were two suits begun in a justice's court, where, after judgments for plaintiff, appeals were taken to the circuit court, and when there the suits were by agreement consolidated and tried as one.   The controversy concerns four shipments, a carload each, three from  Princeton to Kansas City and one from Princeton to St. Joseph, the first August 4, 1903, the second January 12th, the third February 9th, the fourth March 1, 1904.

On the shipment of August 4th it is complained that there was an unnecessary delay in the delivery of the hogs and in consequence there was a damage of the lot to the amount of $60, and for a like reason there was a damage to the amount of $50 on the shipment of January 12th, and of $25 on that of March 1st. As to the shipment of February 9th from Princeton to St. Joseph the complaint is that defendant refused to pass the plaintiff as the law required back from

St. Joseph to Princeton and in consequence plaintiff had to pay $3.10 for his fare.

There was testimony tending to show an unnecessary delay in the delivery of each of the three carloads of hogs at the point of destination and resulting depreciation in the market value of the hogs to the several amounts respectively claimed.

Defendant introduced in evidence the bills of lading issued on these shipments, in each of which was this clause: "said rate being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other considerations it is mutually agreed between the parties hereto, as follows:" then follow stipulations to the effect that the carrier is not liable for any delay in transporting or delivering the stock, and that in case of any loss or damage the shipper must give notice in writing to an officer of the company or station agent before the stock is removed from the place of destination and failure to give such notice shall be a bar to any suit; that in no event shall the company be liable for more than $10 for a hog lost; that the shipper is entitled to ride only on the train with his stock and not to return passage, and that the contract is all to the shipper's own free will and desire. It is signed by the company's agent and the plaintiff. But there were blanks in the printed contract wherein it was intended, when such a contract was really to be made, to insert the rate alleged to be a "reduced rate" in consideration of which the carrier was to be relieved of his common law duty. These blanks in these alleged contracts were not filled, there is no rate specified. There was no evidence to show what the rate was other than the regular tariff. [Kellerman v. Railroad, 136 Mo. 177.]

In the count on the January shipment after stating the delay in delivery at the point of destination and the damages ensuing, there is a statement to the

effect that defendant refused to pass the plaintiff back to Princeton and that he had to pay his fare, but it is not therein stated how much he paid.

The only claim the plaintiff makes in reference to the February shipment is the refusal of the defendant to pass him back from St. Joseph to Princeton. The evidence in support of that claim is that of the plaintiff's father who went with that shipment to St. Joseph. He testified that he returned home on a passenger train and that he tendered the shipment contract to the conductor for his fare, and it was refused, and he paid the fare, $3.10. The plaintiff on being informed of this payment reimbursed his father for that outlay.

The verdict was for the plaintiff for $60 on the August shipment, $50 on the January shipment, $25 on the March shipment, and $3.10 for the return fare of plaintiff's father on the February shipment.

The points made in the defendant's brief in reference to the verdict for the several amounts of damages are all based on the proposition that, the bills of lading stating that the hogs were shipped at a reduced rate in consideration thereof, the defendant's liability was limited.

It will not be necessary for us to discuss the question as to whether the defendant by such a contract could avoid its common law liability in such case, because the contracts in evidence do not show that there was any reduced rate or any consideration for the alleged limitation of liability.

The defendant insists that the statute, section 1085, Revised Statutes 1899, imposing the obligation on the railroad company to pass the shipper in a case like this to and from the point of destination within this State, is unconstitutional, depriving defendant of its property without due process of law, withholding from it equal protection of the law.

Defendant also questions the sufficiency of the evidence to sustain the verdict for the $3.10 fare from St. Joseph back to Princeton. The statute does not say that the bill of lading or shipping contract shall be equivalent to a pass or ticket, but in the absence of evidence showing that the railroad company had adopted any regulation for the issuance of transportation to the holder of the bill of lading for his return we cannot say that the shipper did not have the right to consider the bill of lading his passport. If the railroad company had established any rule or custom in such case in reference to issuing return tickets, to which the shipper ought to have conformed, it should have offered evidence of that fact. We think the evidence sufficient to support the verdict.

We are also of the opinion that the statute does not violate any of the defendant's rights either under the Constitution of Missouri or of the United States. The purpose of the statute is not to require the railroad company to furnish free transportation to an individual for his own pleasure or business, disconnected with the live stock shipment, but it is to make the shipper or his employee in charge of the stock a part of the shipment, to include him in the transaction. The dictates of humanity, as well as the prompting of self-interest, demand that live stock in transportation should be under the supervision of one whose interest it is to see that the animals are well cared for. The State would have the power to require the shipper of every carload of live stock to accompany it in person or by agent and require the railroad company to carry him, not as a gratuity to the individual, but to take care of the animals. When the State requires the transportation company to furnish cars of a certain kind to alleviate the suffering of live stock it involves an outlay of money by the company, but the power of the State to require it cannot be questioned.

The carrying of the shipper or his employee ·with the stock is an act of the same kind, and the return of the shipper to the place from which he started is but an incident to the shipment, it is a part of one transaction.    The judgment is affirmed.

All concur; *Graves, J.,* concurs in result.

## ON MOTION FOR REHEARING.

VALLIANT, P. J.—While this cause has been pending on a motion for rehearing it has been decided by this court In Banc in an opinion by BURGESS, J., in which a majority concurred, that section 1085, Revised Statutes 1899, aiming to impose on the railroad company the obligation to furnish the shipper in a case like this free transportation to the point of destination of the shipment and return, is, to the extent of the free return transportation, in violation of the 14th Amendment of our Federal Constitution, and therefore void.    [McCully v. Railroad, 212 Mo. 1.]    This motion for re-hearing has in fact been continued from time to time to await the decision in that case.    That decision will necessitate a reversal of the judgment in this case to the extent of the item of $3.10, but it does not affect the other items in the plaintiff's demand.    The litigation commenced in a justice court in two separate suits; in the first suit there was but one count in the complaint filed in the justice's court, in the second there were three counts, one of which was for this item of $3.10 for return transportation. Appeals in both cases were taken to the circuit court and when there the two suits by agreement were consolidated.    There was a verdict for the plaintiff on each of the four counts in which the damages awarded in each was separately stated, and judgment accordingly, from which the defendant railroad company appealed, the appeal being to this court because it in-

volved the question of the constitutionality of the stat-
ute above mentioned.    The judgment covering the
other counts are not affected by that statute.

II. The point on which appellant chiefly relies
in support of its motion for a rehearing is that in the
contract under which the defendant undertook to trans-
port the plaintiff's hogs it was expressly stipulated
that in case of loss or injury to the stock the plaintiff
should give defendant notice thereof in writing, the
notice to be served within one day after the delivery
of the stock at destination, and a failure to give such
notice would bar a recovery of any claim on account
of such loss or injury; and that there was no such
notice given in this case.

The contract which defendant produced in evi-
dence recited that, in consideration of the reduced rate
at which the defendant had taken the stock for trans-
portation, certain special terms and conditions were
agreed to, among which were that the stock was not
bound to be transported or delivered within any par-
ticular time, that notice of loss or injury if any, as
above mentioned, was to be given and failure to give
the same was to be a bar to a recovery, and that in
case of loss the damage should be limited to $10 on
a hog, etc.

In the brief for appellant on which this cause
was first submitted it was contended that this was a
valid contract because it was entered into by the plain-
tiff in consideration of the reduced rate at which the
defendant received his stock for transportation.    But
when we looked into the contract and could find noth-
ing to justify the assertion that there was a reduced
rate we said that the special stipulations relied on by
defendant had no consideration to support them.    We
have never questioned the proposition as presented in
defendant's original brief that a railroad company
may for a lawful consideration contract with a shipper

as claimed in this case. We considered the proposition too plain to require argument or citation of authorities. But now the learned counsel in their brief on this motion say: ''We had no intention, though we confess our language might be so construed, to declare it our belief that a special or reduced rate was necessary to the validity of such stipulation; indeed such has never been the rule in this State.''

We understand the proposition of the counsel now to be that no consideration is necessary to support such a contract; in other words, the railroad company may charge the full tariff rate and yet limit its common law liability in the manner now claimed. If there is a decision in this State going to that extent the learned counsel have not brought it to our attention.

The railroad company in making this contract did not proceed on the theory that it had the right to charge full tariff rate and at the same time limit its liability, but on the contrary the contract read in evidence expressly says that the shipper has agreed to it in consideration of the reduced rate. It seems to have been a printed form and therefore presumably the one in common use. If the railroad company had been advised that it could limit its liability in this respect without any concession on its part it is not likely it would furnish printed forms like this to its station agents. Railroad companies are generally well advised as to their legal rights.

There can be no such thing as a contract without a consideration to support it. Our law primer told us that. If therefore the railroad company cannot obtain this limitation on its liability, or this particular right which it now pleads in bar of the plaintiff's claim, otherwise than by contract, then it must give something to support the contract. If it is a concession that requires the shipper's consent before it becomes binding on him, then it is not binding, even though he

does consent, unless he is paid for it.    If on the other hand it is a condition that the railroad company may impose without the shipper's consent, then the law of contract has nothing to do with it, the railroad company may simply adopt it as a regulation and the shipper is bound to accept it.    If it is to be classed under the head of a reasonable regulation which the railroad company may impose without the consent of the shipper, then the railroad company may refuse to receive the shipper's live stock for transportation on any other terms, though full tariff rate be tendered. No case has hitherto fallen under our notice in which a railroad company has claimed such a power.

The right on which the defendant is here insisting is either a right it has independent of contract or one it has obtained by contract; if the former, the shipper's consent is of no consequence; if the latter, his consent is of consequence only when there is a consideration to support it.

Now let us look at the cases cited by defendant's learned counsel and see if this court has ever held the contrary.    We will find in these cases ample authority for the proposition that it is lawful for a railroad company to limit by contract its liability or impose by a contract a condition requiring notice as claimed in this case, but we are now going to search for a case that sustains the proposition of the learned counsel that no consideration in the way of reduced rate is necessary to support such a contract.

The contract which defendant produced in evidence in this case recited that the price charged for the transportation was "at the rate of —— tariff —— per cwt."    A shipping contract in exactly the same words in this respect was construed by this court in Kellerman v. Railroad, 136 Mo. 177, to mean that the price charged was the full tariff rate.    The statute (sec. 1136, R. S. 1899) requires the railroad company

to print and keep posted in their stations a schedule of freight rates and it is forbidden to charge shippers more than those rates. The highest rate that this defendant could have charged the plaintiffs for that shipment was the tariff rate, and that rate covered all that the carrier could demand for the performance of all its common law or statute duty in respect of that shipment. Therefore when the contract shows that that was the rate charged it was vain to recite therein that it was "less than the rate charged for shipments transported at carrier's risk." The plaintiff is not here contending that the carrier assumed anything more in the way of a risk than that embraced in the duty which the law imposes upon a railroad company in the transportation of live stock carried at the regular tariff rate.

In Kellerman v. Railroad, above referred to, the railroad company was seeking to limit the amount of its liability for the loss of the bull which was the subject of the transportation agreement, on the ground that the shipping contract specified that the valuation in case of loss should not exceed $50, exactly like one of the clauses in the contract in the case at bar.

In that case, as in this, it was claimed by the railroad company that the stipulation as to value was made in view of the special rate charged, and it was expressed in that contract that if the shipper valued the bull at more than the value stated therein an addition of 25 per cent would be made to the freight rate for each 100 per cent or fraction thereof added to the value therein expressed. Yet in spite of those specifications the trial court allowed the plaintiff over defendant's objection to introduce evidence showing that the bull was worth $250 and the judgment was for that amount and this court affirmed that judgment. The court per BURGESS, J., in that case discusses the

law as to the power of the railroad company to limit its liability by contract, and, reviewing cases bearing on that subject, declares that whilst the company cannot contract to avoid liability for its own negligence yet it may contract to limit its liability in the particulars in that case mentioned, but the court said: "It will be observed that in all the cases cited upon the question now under consideration, there was an express agreement as to the value of the property, or its maximum value fixed at a specified amount in consideration for special or reduced rates, while no reduced or special rates were contracted for in the case at bar, nor was the value of the bull fixed at a specific sum." Then the court, after referring to other cases in this court, concludes: "Under these authorities we must hold that there was no consideration for the maximum value placed on the bull and the contract in that respect is void."

We call notice again to the fact that the recital in the contract in that case as to the freight rate charged is exactly like the recital in the case at bar, that is, "at the rate of —— tariff per cwt." and the court said it meant the full tariff rate and therefore there was no special or reduced rate and therefore there was no consideration to support the contract.

In Richardson v. Railroad, 149 Mo. 311, the shipping contract contained a stipulation for notice similar to that in the case at bar, and also a clause limiting the value of the animal shipped, and defendant relied on both defenses. The only rate specified in the contract was, as in the case at bar, tariff rate. The court in answering the contentions of the defendant considers the cases cited and concedes that the railroad company may lawfully make a contract, but concludes the subject by saying: "The shipment was charged for at the regular and usual first-class tariff rates used by defendant, and no reduction thereof was

made.    In all cases where such limited valuations
have been held to be binding, such valuations have been
fixed in consideration of some special or reduced rate.
In this case there has been no such special or reduced
rate.    This rule has been repeatedly announced in this
State.    [McFadden v. Railroad, 92 Mo. 343, and cases
cited; Kellerman v. Railroad, 136 Mo. 177, and cases
cited.]''

In Ward v. Railroad, 158 Mo. 226, the shipping
contract contained this clause:    ''In consideration of
the rate of tariff, which is less than the regular rate
from Pittsburg, Kansas, to Kansas City, Missouri, be-
ing granted and agreed upon, to apply to the shipment
herein described,'' etc., a limited valuation of the goods
was agreed on.    The court, notwithstanding that re-
cital, said:    ''There was really no substantial testi-
mony upon the issue tendered by defendant that the
tariff rate given plaintiff was less than the regular
or schedule rate, and for that reason the court might
properly have given plaintiff's instruction numbered
3.    There was no consideration for the 'reduced valua-
tion clause' in the contract of shipment, and to that
extent it was void and inoperative, and should not
have been considered by the jury.''

The foregoing are the more recent of the cases
cited in the brief for defendant in support of the prop-
osition that it has never been the rule in this State
''that a special or reduced rate was necessary to the
validity of such a stipulation.''    Let us now turn back
to the earlier cases cited.

Rice v. Railroad, 63 Mo. 314:    There was no ques-
tion of the consideration for the contract in that case.
The plaintiff himself stated in his petition that his
cattle were shipped under a special contract which re-
quired him to give notice of his loss within a certain
time, that notice was not given within that time, and
then he proceeded to state certain acts of defendant

that rendered it impossible to give the notice within the specified time and that the notice was given as soon as possible. When the case reached this court one of the points advanced by the plaintiff was that the stipulation in the contract as to notice was unreasonable and void, but the court said that the rules of the common law had been so far modified ''as to allow carriers to limit their responsibility by special contract with their employers, provided such contract does not attempt to relieve him from liability for losses incurred by their negligence or misconduct.'' That is the extent to which that case goes. No one now questions that proposition.

Oxley v. Railroad, 65 Mo. 629: Plaintiff shipped a lot of mules, one of which escaped or was lost in the transit. Defendant in its answer set up a special contract to the effect that plaintiff was to accompany the shipment and take care of the stock, that he did accompany it but neglected to take care and the mule escaped by his own negligence; also that in case of loss plaintiff was to give notice within a certain time which he failed to do. On motion of the plaintiff the trial court struck out that part of defendant's answer. This court held that was error. The special contract pleaded was not denied or challenged on the ground of want of consideration.

Dawson v. Railroad, 76 Mo. 514: Defendant pleaded that the cattle were shipped under special contract whereby it was agreed, among other things, that in case of loss the plaintiff was to give notice within a certain time which was not done. The execution of the contract was not questioned or its validity challenged on the ground of want of consideration, but on the trial the court instructed the jury that the plaintiff was entitled to recover notwithstanding no notice was given. This court held that was error.

Railroad v. Cleary, 77 Mo. 634, was a case in

which the railroad company was plaintiff, suing to recover the contract price for carrying the defendant's cattle.  The petition stated that the cattle were shipped under special contract at $20.50 per car, which was a reduced rate, given in consideration that defendant would take care of the cattle on the trip and plaintiff was not to be liable in certain contingencies, and that in case of loss he should give notice within a certain time, etc.  Defendant in his answer admitted the contract, but pleaded as a counterclaim injury to the cattle.  He did not question the consideration or deny that the rate given him was less than the regular rate, but he tried to get out of it by pleading that he did not read the contract before he signed it and did not know its contents.  The trial court considered that no defense, and this court affirmed the judgment.

Dawson v. Railroad, 79 Mo. 296:  In the opinion it is said:  "It was admitted that the sheep were shipped under a special contract by which the plaintiff agreed to assume" certain risks.  There was therefore no question of consideration for the contract in that case.

McFadden v. Railroad, 92 Mo. 343:  A special contract was relied on by defendant to limit the amount of its liability; the contract recited that it was in consideration of the reduced rate, but the evidence showed that it was the regular rate.  The court said: "Under the circumstances of this case, there was, we think, no consideration for the limited valuation placed upon the mules by defendant, and the stipulation in that respect is, we think, void, as releasing the carrier from the full and reasonably adequate liability for its negligence."

Those are the only decisions of this court bearing on this question to which our attention has been drawn, and from them we see that in every case where

the contract relied on by the railroad company was not supported by a consideration in the way of a reduced rate it was held to be void, and the cases in which the contracts were sustained were those wherein their validity was questioned only on the ground that it was against public policy or that the stipulations were unreasonable or that the facts of the case excused the literal compliance with the terms. We do not feel called upon to go outside of our own books to consider cases relating to contracts of express companies, telegraph companies or the like, because whilst between such companies and railroad companies there are some points of resemblance, yet there are also points of difference. We are now dealing with a railroad company whose duty is to a large extent prescribed by our statute and we find ample authority in our decisions for the views herein expressed.

It is of no consequence that the shipper in this case signed the alleged contract; in all the cases above referred to in which the contracts were held void for want of consideration the shippers had signed the contracts.

The motion for rehearing is overruled. The judgment of this court of date June 29, 1907, affirming the judgment of the circuit court, is set aside, and the judgment of the circuit court is reversed and the cause remanded to that court with directions to enter judgment for the plaintiff for $135, being in accordance with the verdict of the jury for $60 on the cause designated in the verdict as case number 44, and $50 on the first count in the cause designated as case number 56, and $25 in the second count in that cause, and to enter judgment for the defendant on the third count in case number 56 which is the count covering plaintiff's claim of $3.10 for return transportation, the judgment to be entered as of the date of the orig-

inal judgment, September 17, 1904. It follows that appellant recovers its costs in this court.

All concur.