CHARLES M. MILLER, RESPONDENT, v. JAMES E. BENNETT ET AL., APPELLANTS.—172 S. W. (2d) 960.

Kansas City Court of Appeals. June 14, 1943.

*E. R. Morrison* and *Morrison, Nugent, Berger & Johns* for appellants.

*Alpha N. Brown* for respondent.

1288

CAVE, J.—This is an appeal from a judgment of the Circuit Court of Jackson County in favor of the plaintiff and against the defendants in the sum of $1319.48.

The petition alleged that the defendants are co-partners, doing business under the style and name of James E. Bennett & Company, and for many years had been doing business in Missouri and operating a brokerage office in Kansas City; that plaintiff had been a customer and patron of defendants in the purchase and sale of stocks and bonds; that on or about July 17, 1936, he purchased through defendants, five $1000 ten year six per cent convertible bonds of the New York Central Railroad Company; that the bonds contained a written privilege that on or before May 10, 1937, they could be converted into common stock of the railroad company at $40 per share; that ". . . on or about April 1, 1937, plaintiff advised defendants that he desired and wanted the bonds converted as aforesaid, on or before May 10, 1937, and that defendants informed plaintiff who was a profitable customer and patron of defendants with a desirable account, that defendants would in due time, attend to and convert the bonds as aforesaid into New York Central Railroad Company common stock without par value, before the said expiration date expired, for so doing, and that plaintiff, as a customer and patron of defendants, could rely and depend upon defendants to make the required conversion; that defendants failed and neglected to make said conversion as they, for good consideration agreed to do, on or before May 10, 1937, and as a result thereof plaintiff sustained damage thereby as hereinafter set forth." Plaintiff then pled the value of the stock as of May 10, 1937,

and the calculation by which his damages arose, but since there is no question about the amount of the judgment, we will not burden the opinion by detailing the values used in arriving at the amount of the damages.

Defendants filed a general demurrer to this petition, which was overruled and exception duly saved; and at the close of all the evidence, the request was again made and overruled.

The answer was a general denial. Jury was waived and upon the trial, judgment was rendered for the full amount claimed, together with interest.

The appellants charge errors (a) in overruling their demurrer to the petition because it neither alleges a consideration nor a mutually binding contract; (b) in not giving their requested demurrer to the evidence, because (1) there is no liability for nonfeasance as to a gratuitous agency; and (2). plaintiff cannot hold defendants liable for damage which he could have prevented by the slightest attention to his own interests; (c) the court erred in giving of its own motion finding of fact No. VIII to the effect that (1) defendants held themselves out to the plaintiff as performing the service of converting bonds; and (2) the plaintiff was entitled to rely upon the performance of a promise without checking to see whether it had been done; (d) the court erred in refusing each of defendants requested declarations of law numbered 3, 6, 8 and 14.

All of the evidence in the record was offered by plaintiff.

Briefly stated, plaintiff's evidence shows the following state of facts: He had been a practicing attorney in Kansas City since 1908 and had been buying stocks and bonds through various brokerage houses since the early twenties and during that time had dealt with four or five different brokerage firms. In the early part of 1935, the defendants located their office across the street from plaintiff's office and in October or November, 1935, he began to do most of his trading through them On July 17, 1936, he purchased the five railroad bonds referred to in the petition, which bonds contained an optional conversion privilege of converting on or before May 10, 1937, into common stock of said railroad company; that Tom Doyle was in charge of defendants' Kansas City office; that about April 1, 1937, when plaintiff was in the office of defendants, he informed Doyle that he wanted the bonds converted into common stock of the railroad, as provided in the bonds, and asked him if he would do it, to which Doyle replied that he would. Plaintiff said, "Now, Tom, can I rely upon that?" and Doyle replied, "You can"; and then Doyle "told me he would let me know when he wanted the bonds—or words to that effect". The bonds were at that time in plaintiff's vault in his office. After this conversation, plaintiff was in defendants' office almost daily and sometimes twice a day, but nothing more was ever said between him and Doyle about the matter until on May 11th or 12th, when plaintiff read in the news-

paper that all of the fifty-eight million dollar bond issue had been converted into common stock, except about two million dollars. Upon learning that, he went to defendants' office and asked Doyle if he had gotten his bonds converted, and Doyle replied, "I forgot all about it . . . A matter of two or three days will not make any difference. I will get them converted." Doyle told him that it had been defendants' practice and custom to send him from Chicago a list of convertible bonds a week or ten days prior to the convertible date and they had failed to do so, and for that reason he had overlooked the date of the conversion. Doyle then requested plaintiff to bring the bonds over to the defendants' office, which he promptly did, but the defendants were unable to convert them, due to lapse of time, and in four or five days the bonds were returned to plaintiff, who, himself, tried to convert them, but was unable to do so. On May 12th, plaintiff notified defendants in writing that he would hold defendants for damages sustained for their failure to convert the bonds. Plaintiff had previously converted some other bonds through the defendants' office, on which occasion Doyle had called him up and told him to bring the bonds over to the office when he got ready to convert them. He did not talk to the defendants about the charge and no charge was made for that service. The reason given by plaintiff for not converting the bonds on April 1st, when he discussed the matter with Doyle was because the stock was not bearing dividends and it would enable him to get a few dollars more of interest on the bonds by not converting them until near the last day for such conversion. The defendants had no financial interest in the matter of plaintiff obtaining this additional interest.

At the close of all the evidence, the defendants requested an instruction in the nature of a demurrer that judgment should be for defendants, which request was refused. The defendants also again requested the court to rule that the petition did not state a cause of action, which was refused. The court refused all findings of fact and conclusions of law asked by both plaintiff and defendants, and made its own findings and gave its own declarations of law.

The first question confronting us is, does plaintiff's petition state a good cause of action?

It seems to us that the decision of our Supreme Court in the case of Swift et al. v. Central Union Fire Insurance Company, 279 Mo. 606, is controlling on us in determining whether plaintiff's petition states a good cause of action. It is conceded that plaintiff's petition is founded upon an oral contract whereby the defendants agreed to perform certain services for the plaintiff at some time in the future; i. e., attend to the conversion of the bonds into stock before the expiration date for such conversion. In the Swift case, *supra*, the court was discussing a petition founded upon an oral contract of insurance, in which "it is averred that defendant agreed to insure the property

1292

of plaintiff, but in consideration of what, is not stated. The petition neither avers the payment of a premium, nor a promise to pay such. In actions upon the kind of contract here sued upon, the petition is fatally defective without an allegation as to a consideration for the promises alleged to have been made by the defendant." The court then reviews at considerable length the authorites concerning the necessity for pleading a consideration in suits on contracts of this kind and distinguishes suits on certain written contracts, which by statute import a consideration and those on oral contracts which do not import a consideration; and from such authorities concludes as follows: "As seen from the authorities cited *supra*, the contract involved here is not one which imports a consideration or one wherein there could be an implied consideration. In other words, the very gist of this action has been omitted in the pleading". It was further held in that case that such defect was fatal and that the trial court committed error in not sustaining the demurrer to the petition, and that such error was not cured by permitting an amendment to the petition after verdict by alleging the consideration. We are unable to distinguish the principles announced in that case from those applicable to the present suit. If there was not an implied promise to pay the insurance premium on the policy when and if issued, then how could there be an implied promise in this case to pay commission for the conversion of the bonds when and if made? Insurance companies write insurance policies with the certain expectation that the proper premiums will be paid and the insured applies for an insurance policy with the expectation of having to pay such premium; and if under such circmstances, the Supreme Court can and does hold that such an oral contract is not one wherein there could be an implied consideration, then certainly we would not be justified in holding this petition sufficient without an allegation of the consideration for the oral promise made by the defendants.

Plaintiff's petition nowhere alleges that the defendants hold themselves out to their customers or the public as performing the particular service herein contracted for, viz. the conversion of bonds into stock; and nowhere alleges that such was the accepted custom and practice of brokerage firms such as defendants. Plaintiff's petition seems to proceed upon the theory that because he "was a profitable customer and patron of defendants with a desirable account" that such fact would be a sufficient consideration. But it is not alleged in the petition that such was the agreement between the parties or that such is the accepted custom and practice of defendants, or similar brokerage firms, with respect to their customers. In our opinion the service contracted for by plaintiff in this case is not one which can be inferred from the mere allegation that the defendants were brokers engaged in the purchase and sale of stocks and bonds. The duties and liabilities of the broker and the customer in the purchase and

sale of bonds and stocks on the open market are well defined by court decisions; but when a different service is contracted for by customers and brokers, when any implications because of the nature of the business (brokerage) which are to be relied upon must be pled.

The petition does not plead that the defendants entered upon the performance of the oral contract or that the law imposes upon them the duty to perform it because of any accepted practice or custom of the business or otherwise. Mechem in his work on Agency (Sec. 478) expresses the rule with reference to gratuitous promises in this manner:

"If in such a case the agent refuses to enter upon and perform the services at all; if his default consists in the mere not doing of a thing which he had promised to perform, *and it be not a case where the law imposes upon him the duty to perform it,* the fact that the performance was to be gratuitous, that the promise to perform was entirely without consideration, will furnish a complete defense to a claim for damages on account of such default." (Italics ours.)

Bliss on Code Pleading (3 Ed.), page 400, sec. 268, says:

"Contracts, to be valid, must be founded upon a consideration, and, except as to those that import, it, the consideration must be proved, and, consequently, should be stated. The petition should set it out, or show the contract to be one where the law so imports it as to dispense with the proof."

In his brief, plaintiff first argues that because he contracted with the defendants for this particular service that there would follow an implied promise on his part to pay the proper charges for such services, and then later on argues that "general profits and advantages of business is also a consideration," and that the desire of the defendants to hold the good will of the plaintiff as a customer to obtain future business from him would constitute a consideration. This very uncertainty on the part of the plaintiff as to what the consideration was for this oral contract only emphasizes the necessity of plaintiff pleading what he claims the consideration was. In George v. Chicago Rock Island Ry. Co., 214 Mo. 551, 559, the Supreme Court said: "There can be no such thing as a contract without a consideration to support it. Our law primer told us that."

It is also contended by plaintiff that when the following allegation "that defendants failed and neglected to make said conversion as they, *for good consideration, agreed to do,* on or before May 10th . . ." is taken in connection with the other facts pleaded in the petition, it is sufficent to properly plead a consideration. But the plea "*for good consideration*" is a mere conclusion of law and is not a statement of any fact and the demurrer would not admit the truth of such legal conclusion. [William R. Bush Construction Co. v. Bambrick-Bates Construction Co. et al., 176 Mo. App. 608; German Bank v. Mulhall, 8 Mo. App. 558; Piggott v. Denton, 46 S. W. (2d) 618; Polaris Bldg.

Corp. v. Bimberg et al., 241 N. Y. S. 738; Burke v. Leming Lbr. Co., 121 Ark. 194, 180 S. W. 499.] It is also contended that there are sufficient substantive facts stated in the petition to "at least imply a legal obligation on the part of plaintiff to pay for the services of defendants". We think not. The very fact that plaintiff, as above mentioned, is asserting two propositions from which consideration can be implied, i. e. (1) that there was an implied promise on his part to pay for said services; and (2) the desire of the defendants to hold the good will of the plaintiff as a customer, to obtain future business from him, poses the question: which theory shall we adopt, when the petition does not clearly plead either? Under such circumstances we would not be justified in holding that the substantive facts stated are sufficient from which consideration can be implied.

Plaintiff cites a number of cases announcing the general principle that if services are rendered at a defendant's request, the law would imply that plaintiff was to be paid a reasonable compensation therefor. But we do not think such cases decide the issue confronting us. This is a suit for damages for breach of an oral executory contract, and we feel that the ruling in the Swift case, *supra*, compels us to hold that the petition is defective in that it does not allege a consideration for the contract and that the trial court erred in not sustaining the demurrer to the petition. Plaintiff directs our attention to the opinion in Hawkins v. Paeben, 332 Mo. 479, 58 S. W. (2d) 437, which was a suit for real estate commission, and quotes this part of the opinion (l. c. 438):

"The petition does not in terms allege that they promised to pay the commission. However, it does allege the facts above set forth, and by implication from such facts, alleges that the company so promised. We hold the petition to be good after verdict."

There was no demurrer filed to the petition. Defendant relied on an objection to the introduction of testimony and in this situation, the court said: "The petition must be given a most liberal construction." Furthermore, the allegations of the petition were not set out in the opinion, but the facts concerning the transfer of the property and the promise of a commission to the agent were set out at great length, and showed that the agent had completed his part of the services and the only reference to the allegations of the petition made by the court is as follows: "It does allege the facts above set forth, and by implication from said facts *alleges that the company so promised.*" It seems plain from reading the opinion that it is not an authority which would support the petition here involved.

Our attention is also directed to the case of State ex rel. v. Hostetter, 346 Mo. 249, 140 S. W. (2d) 21, in which it was held that a defective petition might be cured by the admission of proof of the omitted facts without objection, provided the nature of the cause of action was not changed. But we find no proof in this record which would

supply the omission from the petition. In his brief the plaintiff seems to cast the burden of proof in this particular on the defendants, because he states, "There is absolutely no evidence in the case that the undertaking and agreement of defendants to convert was gratuitous." If it was necessary, as we hold, for the plaintiff to allege a consideration to support the oral contract, then the burden of proving the facts supporting consideration would be on him and not on the defendants. If we have properly construed the Supreme Court's ruling in the Swift case, *supra*, then there is no merit to this contention.

There are other errors charged concerning the sufficiency of the evidence and findings of fact and refusal of declarations of law; but we deem it unwise to discuss such questions at this time because on another trial the issues made by the pleadings and the evidence thereunder may not give rise to such alleged errors.

We conclude that the trial court committed error in not sustaining the demurrer to the petition and will reverse the judgment and remand the cause. It is so ordered. All concur.