PHOENIX POWDER MANUFACTURING COMPANY v. WABASH RAILROAD COMPANY, Appellant.

In Banc, June 1, 1906.

1. **APPELLATE JURISDICTION: Federal Question: Bona Fide in Case.** The Supreme Court will look deep enough into the case to see if there was in truth any Federal question involved, and if there was not it will not entertain the appeal on that ground. An attempt to get a Federal question into the case by presuming a case within the Interstate Commerce Act will not be countenanced.

2. ——: ——: ——: **Freight Rate: Fixed by Bill of Lading: Interstate Commerce Act.** Where no freight rate is fixed verbally or in writing, and no allusion is made to a reduced rate, the shipper is not to be presumed to have known that a reduced rate was charged because the printed schedule contained a clause limiting the carrier's liability; and in such case the question of whether or not the carrier's liability for loss of goods shipped over the defendant's road and transfered to a connecting road in another State, is limited because of reduced rates, cannot be brought into the case by a presumption that the shipper knew that the carrier had filed with the Interstate Commerce Commission a schedule of rates for shipments of goods to other States over defendant's and connecting lines, knew such rates were based on a limitation of the carrier's liability, and knew that such rates, having been approved by the commission, were unalterable. A Federal question cannot be based on any such presumption.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Geo. S. Grover* and *Henry W. Blodgett* for appellant.

(1) A contract, if disaffirmed, must be disaffirmed *in toto*. Estes v. Reynolds, 75 Mo. 563. (2) If a shipper receives a bill of lading at the time the shipment is made and does not object to its terms, either then or at any time before it is too late to recall the property in the absence of fraud or mistake he is bound by it. Cau v. Railroad, 194 U. S. 427; O'Bryan v. Kinney, 74 Mo. 125; McFadden v. Railroad, 92 Mo. 343; Railroad v. Cleary, 77 Mo. 634; Kellerman v. Railroad, 136 Mo. 177; Arthur v. Railroad, 40 Am. and Eng. R. R. Cases 127. (3) While primarily the responsibility of a common carrier is that expressed by the common law, and the shipper may insist upon such responsibility, he may consent to a limitation of it, and so long as there is no stipulation for an exemption which is not just and reasonable in the eye of the law, the responsibility may be modified by contract. It is not necessary that an alternative contract be presented to the shipper .for his choice. A bill of lading is a contract, and knowledge of its contents by the shipper will be presumed, and a provision therein against liability for damages by fire is not unjust or unreasonable. It is not necessary that there be an independent consideration apart from that expressed in the bill of lading to support a reasonable stipulation from exemption or liability. Cau v. Railroad, 194 U. S. 427. (4) While the burden may be on the carrier to show that the damage resulted from the excepted cause, after that has been shown, the burden is on the plaintiff to show that it occurred by the carrier's own negligence, from which it could not be exempted. Cau v. Railroad, 194 U. S. 427; Davis v. Railroad, 89 Mo. 340; Witting v. Railroad, 101 Mo. 631.

*Kinealy & Kinealy* for respondent.

(1) Appellant is liable as a common carrier for the loss of the goods in question since respondent did not ask or contract for any reduced rate of freight, and there is consequently no consideration for any alleged contract limiting appellant's liability. Such a contract must be an express agreement consented to by the shipper and supported by an independent consideration. Phoenix Powder Mfg. Co. v. Railroad, 101 Mo. App. 442; Kellerman v. Railroad, 68 Mo. App. 255; Levering v. Union T. & S. Co., 42 Mo. 88. (2) There is no Federal question in this record. Appellant undertook to carry these goods to destination and is liable for their loss, as its liability was not restricted. This is the law of Missouri and the Federal interstate commerce statute in no way affects it. Western Sash & Door Co. v. Railroad, 177 Mo. 641.

GANTT, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis, for the plaintiff, for $1,548.97.

The action was for damages to the amount of two thousand dollars for a failure to safely carry from St. Louis to Twist, Texas, eight hundred kegs of blasting powder, eighty cases of forty per cent dynamite, and two barrels of D. T. fuse, and to deliver the same to W. R. Stubbs Contracting Company in as good condition as when received by defendant.

While enroute the car in which the said powder was stored, and said powder, were destroyed by fire and was never delivered. The defendant pleaded a special written contract with plaintiff whereby in consideration of a reduced rate of freight, it undertook to transport said goods to the end of its line only, and that by said special agreement neither defendant nor any of its connecting lines should be liable for the loss

of said property occasioned by fire or the negligence of defendant or its connecting carriers, and would not be liable for any damages to the said property after it was receipted for in good order by the next succeeding carrier, and for the same consideration it was agreed that in case of loss the value should be computed as of the time and place of shipment, and. said property should be transported at plaintiff's risk, and that it faithfully complied with said contract and transported said property safely over its line to Kansas City, the end of its line, and there safely delivered the same to the Rock Island Railway Company and said company safely transported the said property to Bowie, Texas, and there safely delivered the same to the Fort Worth and Denver Railway Railway Company, and that while in the possession of the last-named company, at Bowie, Texas, it was accidentally destroyed by fire.

The reply was a general denial of the new matter set up in the answer, and also set up facts surrounding the destruction of the car of explosives, and upon those facts charged that the destruction of the car was due to the negligence of the defendant. On the first trial of the case the plaintiff was nonsuited in the circuit court, and appealed to the St. Louis Court of Appeals, and the judgment was reversed and the cause remanded with a direction that the only matter to be investigated in the case, was the amount of the damage sustained by plaintiff. [Phoenix Powder Mfg. Co. v. Railroad, 101 Mo. App. 442.]

Upon the return of the case to the circuit court, an amended answer was filed, which was the same as the original answer except that it contained the following allegations:

"Defendant says that in the month of March, 1901, as well as long prior thereto, a certain act of Congress of the United States, entitled, 'An Act to Regulate Commerce,' approved February 4, 1887, with the various amendments thereto, enacted by said Congress in

the years 1888, 1889, and 1891, respectively, was in full
force and controlled all shipments over the railroad
of defendant from all points on its lines in Illinois and
Missouri, to all points on its connecting lines in the
State of Texas, and elsewhere beyond the state line of
Missouri. That in due compliance with said law of the
United States then and there in force as aforesaid, de-
fendant had in March, 1901, and still has, on file with
the Interstate Commerce Commission, a body created
by said act of Congress above cited, at the office of said
commission in the city of Washington, D. C., its print-
ed schedules or tariffs, showing the rates of freight
then in force, for all classes of property, including live
stock, from all points on its own railway in one state,
to points on its own and connecting lines of railway in
other states; that said schedule and tariffs were then,
as now, duly printed, published and filed by defendant,
in strict conformity to the said laws of the United
States then in force as aforesaid. That said act of
Congress of the United States, entitled, 'An Act to
Regulate Commerce,' approved February 4, 1887, with
the various amendments thereto, enacted by said Con-
gress of the United States, in the years 1888, 1889 and
1891, respectively, were in full force and effect at said
time, and are now valid statutes, duly enacted by said
Congress of the United States, and that said Congress
of the United States was then, as now, duly authorized
and empowered to enact such laws, and that under said
valid statutes of the United States said contract of
shipment, as contained in the bill of lading hereinbefore
set forth, supported and based upon said reduced rate
as aforesaid as a consideration therefor, as hereinbe-
fore set forth, was a valid and subsisting agreement for
the transportaton of the property therein described,
between the states therein named, which could not, un-
der the penalties then and there prescribed by said
valid statutes of the United States, be departed from,

varied, modified, controlled, abrogated or repudiated by either the plaintiff or the defendant herein.

"Further answering, defendant says, that any construction of said statutes of the United States, or upon said interstate contract of shipment, as aforesaid, placed upon either said statutes or said contract of shipment which would abrogate, modify or destroy said contract, as hereinbefore set forth, would be a violation of the fifth and fourteenth amendments to the Constitution of the United States, as well as of section 30 of article 2 of the Constitution of Missouri, in that such a construction by said courts of said statute, or of said contract, would deny to the defendant herein the equal protection of the laws of the United States, and also deprive the defendant herein of its property without due process of law, and also deny to the defendant herein, a right, privilege and immunity guaranteed to it by the Constitution and laws of the United States, as well as of the State of Missouri. Wherefore defendant says that plaintiff ought not to have or maintain this action, and having fully answered, prays to be discharged with its costs."

The reply denied all new matter contained in the amended answer. Upon the trial the bill of lading was in evidence and no rate of freight was named in it and there was absolutely no pretence that the plaintiff or any agent of it and the defendant, or any of its agents, had ever agreed verbally upon a reduced rate or even discussed such a thing. There was not a word to show plaintiff knew it was to receive a reduced rate, and there was no testimony to show plaintiff was in the habit of shipping over defendant's road. While defendant's counsel concede this, they seek to fasten upon plaintiff, constructive knowledge that it was to receive a reduced rate. As pithily put by Judge GOODE, on the appeal in the St. Louis Court of Appeals, 101 Mo. App. l. c. 455, "Their argument runs in this wise: The contract showed on its face a limitation of defend-

ant's liability, which the plaintiff is presumed to have known; in consideration of this limitation a smaller freight charge was always made in accordance with a tariff of rates which had been fixed by an association of railway companies, vised by the Interstate Commerce Commission and published in a book open to the inspection of shippers; plaintiff is presumed to have known the different rates for freight of different classes when carried at the railway company's or at the shipper's risk, because the Interstate Commerce Commission had approved them. All this is far-fetched, and to our minds still other presumptions are required to carry knowledge to the plaintiff of the rate charged by the defendant for the shipment in controversy. Plaintiff must be presumed to have known the goods were first-class freight according to the defendant's classification for interstate business, and presumed also to have known the defendant would charge the tariff rate for first-class freight carried at the owner's risk and no more; would observe its schedule. We grant that plaintiff is presumed to have known the contents of the bill of lading and is bound by them, there being no evidence of deception. [Railroad v. Cleary, 77 Mo. 634; McFadden v. Railroad, 92 Mo. 343; Kellerman v. Railroad, 136 Mo. 177.] We grant also that it has been decided a shipper is presumed to know the rates fixed and approved by the Interstate Commerce Commission, and whether a rate named in a bill of lading, or agreed to verbally, is higher or lower than one published pursuant to the Interstate Commerce Act. [Gerber v. Railroad, 63 Mo. App. 145; Wyrick v. Railroad, 74 Mo. App. 406.] And if a bill of lading, without naming the rate, recites that it was a reduced one, proof may be made that the rate was less than the one charged for non-release contracts. [Duvenick v. Railroad, 57 Mo. App. 550.] But that when no rate is fixed verbally or in writing, and no allusion is made to a reduced rate, the shipper is presumed to have known a

reduced one was charged because the printed receipt contained a clause limiting the carrier's liability, has never been decided in this state or to our knowledge." All of which we endorse. The attempt to get a Federal question into this case by presuming a case within the Interstate Commerce Act and thereby give this court jurisdiction of this appeal cannot be countenanced. We will look deep enough into the case to see if there was in truth any ground upon which this appeal should have been certified to this court, and upon such examination we are of opinion that the Interstate Commerce Act had nothing whatever to do with the case, and there is no bona-fide Federal question involved in the appeal, and this being the only possible ground upon which this court could entertain jurisdiction of the appeal, the appeal must be transferred to the St. Louis Court of Appeals, and it is so ordered. *Brace, C. J., Burgess, Valliant, Fox, Lamm* and *Graves, JJ.,* concur.