DIAMOND MATCH COMPANY, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, November 27, 1906.

1. **APPELLATE PRACTICE: Filing Bill of Exceptions After Time.** Where an appellant filed no bill of exceptions either during the term at which the case was tried or the one when the motion for new trial was overruled, the appellate court cannot consider exceptions preserved in a bill filed thereafter; the carrying over of a motion in arrest of judgment to a subsequent term did not carry with it the right to preserve exceptions, saved at previous terms, by bill of exceptions filed at such subsequent term.

2. **PRACTICE: Nunc Pro Tunc Entry.** The trial court cannot make a *nunc pro tunc* entry, showing the extension of time at a previous term to file bill of exceptions, where there was nothing to show any minute on which to base such *nunc pro tunc* entry.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*George S. Grover* and *Henry W. Blodgett* for appellant.

*E. T.* and *C. B. Allen* for respondent.

(1) Defendant's exceptions, if any, to the action of the court in overruling its motion for a new trial on March 8, 1905, were not preserved by a bill of exceptions filed during said February term. The court has no power to permit a bill for such exceptions to be filed on January 19, 1906, at the December term, 1905, of said court. Powell v. Sherwood, 162 Mo. 611; State v. Gartrel, 171 Mo. 505; Bick v. Williams, 181 Mo. 526; Building Assn. v. Refrigerator Co., 127 Mo. 499. (2) The continuance of the motion in arrest did not have the effect to carry

defendant's exceptions to the overruling of its motion for a new trial, from the February to the December terms, 1905. State v. Goehler, 193 Mo. 177; State v. Larew, 191 Mo. 192; City v. Lawton, 189 Mo. 474; State v. Miller, 189 Mo. 675; State v. Williams, 147 Mo. 18; State v. Taylor, 134 Mo. 109; State v. Broderick, 70 Mo. 622; Cranor v. District, 18 Mo. App. 400.

GOODE, J.—This is an action in the nature of trover. The petition alleges that on July 18, 1901, at Steele, Illinois, there was delivered to defendant as a common carrier, 1,935 cases of matches in good condition, belonging to plaintiff and, in consideration of certain freight charges paid to the defendant, said matches were to be transported by it from Steele to the city of St. Louis, Missouri, and at the latter place delivered to plaintiff, or its agent, in as good condition as when received; that the defendant failed and neglected to deliver said property to plaintiff in as good condition as when received; that the property while in defendant's possession as common carrier and before delivery at St. Louis, was in part destroyed and the remainder greatly injured to plaintiff's damage in the sum of $1,388.94; that plaintiff demanded said damages of defendant August 7, 1901, and defendant then paid plaintiff the sum of forty dollars, and has ever since that date refused to pay the balance of $1,348.94; for which, with interest and costs, judgment was asked. In the answer to the petition defendant admitted it received the matches from the Michigan Central Railroad Company at Steele, Ill., to be transported to St. Louis, and denied the other allegations of the petition. For a further defense the answer pleaded a bill of lading alleged to have been entered into by the Michigan Central Railroad Company, acting for itself, and as agent for defendant, and plaintiff, whereby, in consideration of a reduced rate of freight rendered to plaintiff for transporting the matches, the Michigan Central Company and de-

fendant undertook and agreed to transport them on the terms and conditions embodied in the bill of lading. It was alleged one of those conditions was that in consideration of the reduced rate of freight, no carrier which might transport the property on its way to destination, should be liable for any damage done to the property by fire, unless the fire was caused by the negligence of the carrier in possession of the goods when the fire occurred. Other stipulations in the bill of lading not material on this appeal were pleaded, and compliance with certain acts of Congress which may be designated as the Interstate Commerce Acts. It is alleged that in the observance of said laws of the United States, defendant at the time of the shipment in controversy, had and still has on file with the Interstate Commerce Commission at its office in Washington, printed schedules or tariff sheets, showing the rates in force on defendant's line for all classes of property, for carriage from any point on said line or any connecting line of railway in one State to a destination in another State; that under and by virtue of said acts of Congress and defendant's freight rates on file as aforesaid, the bill of lading under which the matches were shipped and all the terms thereof, including the term exempting defendant from liability for damage by fire, were valid. The reply admitted the consignment of the matches to the Michigan Central Railroad Company at Detroit, to be transported to St. Louis, Missouri, alleged the railroad company last named was a corporation owning and operating a railroad in the State of Michigan, and that prior to the shipment in question there was in force in said State a statute prohibiting a railroad company from abridging its liability as a common carrier for loss of freight, unless by an agreement signed by both the shipper and the railroad company. The reply further averred that neither defendant, nor any person for it, signed an agreement abridging the liability of said Michigan Central Company or of the

defendant in respect of the goods in controversy. Certain stipulations regarding the facts were made by the parties which need be noticed no further than to say it was agreed, among other things, that in case judgment should go against defendant, the amount which plaintiff was entitled to recover was $1,388.94, with interest from August 7, 1901, after crediting defendant with the sum of forty dollars as the proceeds of the matches not burned.

At the conclusion of the trial judgment was entered in plaintiff's favor for the amount agreed. A jury was waived and the facts were tried by the court sitting as a jury. No declarations of law were asked, except one by the defendant that, under the pleadings and the evidence, plaintiff could not recover.

The first question to be considered is whether or not this court can review the exceptions taken at the trial; respondent insisting it cannot, because the bill of exceptions was filed at a term subsequent to the term during which the trial occurred, or the term at which the motion for new trial was overruled. The history of the case is fully given in State ex rel. Wabash R. R. v. Ryan, 115 Mo. App. 414, 90 S. W. 418, which was an original proceeding in this court to compel the Hon. O'Neill Ryan, judge of the circuit court of the city of St. Louis, to file and allow a bill of exceptions in this cause. It will be seen by reading the statement of facts in said proceeding, that mistakes occurred in keeping the record of the case in the circuit court, some of which were corrected by *nunc pro tunc* entries and others were not. Judgment was first given in the case on January 4, 1905; but in order that defendant might have an opportunity to file motions for new trial and in arrest, this judgment was ordered set aside and a new judgment entered on January 18th. The clerk entered the order on January 18th to set aside the judgment rendered on January 4th, but did not enter the judgment of January

18th as the court directed. However, on the next day, January 19th, the defendant filed motions for a new trial and in arrest. The motion for new trial was overruled on March 8th, but the motion in arrest of judgment was not overruled until January 10, 1906, and at a subsequent term. No term bill of exceptions was filed preserving defendant's exceptions to what occurred at the trial term, nor was any such bill filed at the term when the motion for new trial was overruled, nor was any time given at said term (the February term, 1905), for the filing of a bill beyond the term. At a subsequent term a *nunc pro tunc* entry was made as of date January 18th, entering the judgment against the defendant which had been given on the last named date but, by mistake of the clerk not entered. This *nunc pro tunc* entry was ordered on June 14, 1905, and at the same time the court overruled a motion filed by defendant for a *nunc pro tunc* entry as of date March 10th, during the February term, showing an extension of time to defendant for the filing of a bill of exceptions. The latter ruling was made because there was no minute of record to justify such a *nunc pro tunc* entry. On June 17, 1905, three days after the entry of the judgment *nunc pro tunc* as of date January 18th, defendant filed motions for new trial and in arrest of said judgment, which were stricken from the files by the court because the case had been previously appealed. Said appeal was taken to this court and was granted at the February term, 1905, while the original motion in arrest of judgment was still pending. With the record in this condition, application was made to us to grant a writ of mandamus to compel the circuit judge to file and allow a bill of exceptions in the cause. We held the appeal granted while the motion in arrest of judgment was still pending was premature, and denied the application for the writ; suggesting that if the appeal then pending was dismissed, the motion in arrest could afterwards be disposed of and another appeal taken.

Thereupon the appeal was dismissed, the motion in arrest was overruled by the circuit court and defendant brought the case here by this appeal.  As defendant filed no bill of exceptions, either during the term the case was tried or the one when the motion for new trial was overruled, we can examine nothing on the present appeal but the record proper.  The carrying over of the motion in arrest to a subsequent term did not carry with it the right to preserve by bill of exceptions at such subsequent term, exceptions saved at previous terms. [State v. Larew, 191 Mo. 192.]  Plaintiff's counsel insist that as defendant did not call up the motion in arrest for a ruling prior to judgment, it will be presumed to have waived it and, hence the first appeal was not premature; citing certain authorities. [Hall v. Nees, 27 Ill. 411; Hoop v. Culbertson, 17 Iowa 305, and others.]  Most of the cases cited are not very pertinent to the proposition they are supposed to support.  Indeed, the Illinois case, which is the most apposite, appears to put the waiver of a ruling on the motion in arrest, on the ground of unreasonable delay.  In our opinion in the mandamus case we did not lose sight of the fact that decisions might be found which would countenance the idea that the first appeal was good, though the motion was pending.  But in view of the practice in this State to give judgment immediately on the coming in of the verdict and permit motions for new trial and in arrest to be filed afterwards, we concluded the better ruling was to hold an appeal would not lie while the motion in arrest was pending; because if the motion was sustained and the judgment arrested, there would be no need for an appeal by the party against whom the judgment went.  We still think that conclusion is sound and particularly applicable to the present case; for it does not appear affirmatively the defendant failed to call up its motion in arrest, and in view of the numerous errors in the record as kept by the

clerk it would be rash to presume the failure to rule on it was due to defendant's neglect.

The question of whether or not the exceptions saved at the trial could be reviewed on an appeal to be allowed after the motion in arrest was overruled, there having been no bill of exceptions filed at the term the motion for new trial was overruled, was not determined by us in the mandamus case, but was left to await the decision of defendant's right to a *nunc pro tunc* order for filing its bill of exceptions. The point decided was that the first appeal was premature and another one could be taken after the motion in arrest was overruled. In the opinion we made these observations:

"Now, then, we have two outstanding facts tending to show the first appeal was premature, namely; the pendency of the motion in arrest and the fact that when the appeal was allowed there was no entry of record of a judgment in the case. The latter fact is the only one insisted on as invalidating the original appeal; but we deem the pendency of the motion in arrest decisive and its effect more certain. Hence, we shall rest our decision on it. In truth the argument in the briefs has gone principally to what we consider an immaterial proposition; the right of the railroad company to *nunc pro tunc* entries extending its time to file bill of exceptions and allowing it to file motions for new trial and in arrest after the entry on June 14th of judgment *nunc pro tunc* as of Jaunary 18th in favor of the Diamond Match Company. These questions may all be put aside; for in view of the fact that no valid appeal was granted, they may be included in the record when a valid appeal is taken, and, if relevant to the final result in the cause, may be reviewed."

Those remarks are made the subject of criticism in plaintiff's brief on the ground that they amounted to a decision that exceptions taken during the trial could

be reviewed on the appeal to be allowed, whether or not a bill of exceptions had been filed at the term when the motion for new trial was passed on, and that such a ruling was in conflict with the decisions of the Supreme Court of this State. The quoted language does not bear that construction. Much contention was made in the mandamus case in regard to the right of the defendant company to *nunc pro tunc* entries extending its time to file bill of exceptions and allowing it to file motions for new trial and in arrest; said company contending that when judgment was ordered *nunc pro tunc* on June 14th, in favor of plaintiff, it was then entitled to *nunc pro tunc* entries for a bill of exceptions and motions. What we said was that its right to those entries could be determined on the present appeal and not that the exceptions taken at the trial could be reviewed. Defendant certainly was entitled to a bill of exceptions on the court's rulings on its motions for *nunc pro tunc* orders, as the term when said motions were made had not passed; and so we said in the mandamus case. We had no occasion to pass on the question of its right to have exceptions saved at the trial reviewed, and any remark on the subject would have been a dictum. We hold, on the record presented, that defendant was not entitled to a *nunc pro tunc* entry in June, 1905, showing the granting of time at the February term, to-wit; on March 10th, to file a bill of exceptions, because there is nothing to show any minute on which to base such *nunc pro tunc* entries. [Ross v. Railroad, 141 Mo. 390, 38 S. W. 926, 42 S. W. 957.] As to defendant's right to *nunc pro tunc* entries as of date January 19th, showing the filing of motions for new trial and in arrest, suffice to say the record shows it filed motions on said day and this has been taken to be the fact in considering the cause. We cannot review the exceptions because they were not saved by bill at the term the motion for new trial was overruled, nor by bill filed within a time granted at such term. No

error is assigned on the record proper; hence the judgment will be affirmed.

It may not be improper to state that we have looked into the merits of this case and, in our opinion, the facts are identical with those of Phoenix Powder Co. v. Wabash R. R., 101 Mo. App. 442, 74 S. W. 492, in which we held that a bill of lading in all its relevant clauses like the one at bar, contained no consideration for a release of the railroad company's common law liability as a common carrier. The bill of lading in the present case neither states that the rate was reduced, nor shows at what rate the goods were carried. Neither was there any showing that a reduced rate was agreed to by the parties. Our opinion in the Phoenix Powder case received the approval of the Supreme Court (94 S. W. 235, 196 Mo. 663), and likely would control the decision of the present appeal if we could go into the merits. All concur.