100        McIntosh *v.* Oregon R. R. etc. Co.    [17 Idaho,

Points Decided.

(October 28, 1909.)

EWEN McINTOSH, Respondent, v. THE OREGON RAIL-
ROAD AND NAVIGATION COMPANY, a Corpora-
tion, Appellant.

[105 Pac. 66.]

COMMON CARRIER—LIABILITY—SPECIAL CONTRACT—POWER TO MAKE—
CONSIDERATION—REASONABLENESS—BURDEN OF PROOF.

1. A common carrier may limit its strict common-law liability as
an insurer in such manner as the law can recognize as reasonable
and not inconsistent with sound public policy, but cannot make a
contract exempting the carrier from negligence.

2. Such contract must be reasonable, and must have some consid-
eration to support it and not be opposed to public policy.

3. A railroad company, engaged in the business of common carrier,
is bound under the common law to receive and carry, within the class
of goods it is engaged in carrying, such goods as are tendered for
that purpose; and in the absence of a special contract, to carry
them with the full common-law liability of a common carrier.

4. When a shipper goes to a carrier with a view of making a
shipment, and the carrier has different kinds of contract, one by
which the carrier insures the goods shipped, and the other by which
the shipper assumes all risk, it is incumbent upon the carrier to show
the contract actually made.

5. The fact that the railroad company accepts the goods and agrees
to ship them is not a sufficient consideration for the waiver on the
part of the shipper of the carrier's liability as insurer.  There must
be some other consideration, such as a reduced rate.

6. A bill of lading which in terms is a receipt for the goods to
be transported, which contains a statement that "This contract, and
the responsibilities of the parties hereto, is limited and controlled by
the conditions printed on the back hereof; as also by the terms and
conditions of this company's printed tariffs, which are hereby de-
clared to be an essential part to this contract," and upon the back
of such bill of lading is the statement that the goods mentioned
are received for carriage, subject to the condition that the carrier
shall not be liable for any loss or damage by fire, does not show
upon its face any consideration for such exemption, and such exemp-
tion is void as against the shipper unless it be shown by other evi-
dence that there was a consideration for such exemption.

7. Where the evidence does not show that the agent of the car-
rier, or the shipper, knew that a special rate would be given, or was

given, as a condition for an agreement upon the part of the shipper that the carrier should be exempt from liability for loss by fire, it is not error to sustain an objection to the question propounded to a clerk in the general freight department of such carrier, that such company had in force and effect two rates, one by which a less rate was charged, upon condition that the shipper waive the right to hold the carrier liable for loss by fire, than was charged where no such condition was embraced in the contract.

8. Where a special contract is plead as a defense in an action to recover damages for loss of goods by a common carrier, the burden of proof is upon the carrier to prove the contract and to prove a consideration therefor; and the mere fact that the shipper accepts a bill of lading containing conditions of exemption, without such contract showing a consideration therefor, does not presume a consideration.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for the County of Shoshone. Hon. W. W. Woods, Judge.

An action to recover damages for loss of goods received by a carrier for shipment. Judgment for plaintiff. Affirmed.

W. W. Cotton, Featherstone & Fox, and W. A. Robbins, for Appellant.

Where the shipper accepts a special contract from the carrier, he is conclusively presumed, in the absence of fraud, imposition, accident or mistake, to have consented to all the terms and conditions contained in it, and he cannot afterward be heard to say that he did not read the instrument or did not know its contents. (St. Louis etc. Ry. v. Weakly, 50 Ark. 397, 7 Am. St. 104, 8 S. W. 134; Jones v. Cincinnati etc. Ry., 89 Ala. 376, 8 So. 61; Ryan v. Mo. Ry., 65 Tex. 14, 57 Am. Rep. 589; Western Ry. Co. v. Harwell, 91 Ala. 340, 8 So. 649; Rose v. Northern Pac. Ry., 35 Mont. 70, 88 Pac. 767; Lane v. Pacific etc. Ry., 8 Ida. 230, 67 Pac. 656; Mires v. St. Louis etc. Ry. (Mo. App.), 114 S. W. 1052; Inman v. Seaboard etc. Ry., 159 Fed. 960; Nashville etc. Ry. v. Stone, 112 Tenn. 348, 105 Am. St. 955, 79 S. W. 1031.)

The option of entering into a common-law contract or a special contract need not in fact be offered to the shipper. It is sufficient if either would have been given him had he demanded it. (*Nashville etc. Ry. v. Stone*, 112 Tenn. 348, 105 Am. St. 955, 79 S. W. 1031; *Louisville etc. Ry. Co. v. Manchester Mills*, 88 Tenn. 653, 14 S. W. 314; *Louisville etc. Ry. v. Sowell*, 90 Tenn. 17, 15 S. W. 837; *Cau v. Texas & Pac. Ry.*, 194 U. S. 427, 24 Sup. Ct. 663, 48 L. ed. 1053; *Mires v. St. Louis etc. Ry.*, *supra.*)

Plaintiff must make affirmative proof of want of consideration to avoid a special stipulation exempting the carrier from its common-law liability. The presumption is there was sufficient consideration for a limitation, and unless plaintiff proves absence of consideration by clear and satisfactory proof, the presumption of consideration will prevail. (Secs. 3314, 3315, Rev. Codes; secs. 1614, 1615, Deering's Ann. Cal. Codes; *Henke v. Eureka Endowment Assn.*, 100 Cal. 429, 34 Pac. 1089; *Schaller v. Chicago etc. Ry.*, 97 Wis. 31, 71 N. W. 1042; *L. & E. Ry. Co. v. Holland*, 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948; *Evansville v. McKinney*, 34 Ind. App. 402, 73 N. E. 148; *Chicago etc. Ry. Co. v. Hare*, 36 Ind. App. 422, 75 N. E. 867; *United States etc. Co. v. Joyce*, 36 Ind. App. 1, 69 N. E. 1015; *Mires v. St. Louis etc. Ry.* (Mo. App.), 114 S. W. 1052; *Shelton v. St. Louis etc. Ry.*, 131 Mo. App. 560, 110 S. W. 627.)

Common carriers may by express terms or special contract with their employer be exonerated from that rigorous rule of the common law which in the absence of contract makes them insurers of the safety of the goods intrusted to them. (*Hart v. Pennsylvania Ry. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. ed. 717; *Railway Co. v. Lockwood*, 17 Wall. 357, 21 L. ed. 627; *Cau v. Texas & Pacific Ry.*, 194 U. S. 427, 24 Sup. Ct. 663, 48 L. ed. 1053; *Re Released Rates*, 13 Int. Com. Rep. 551; *Hill v. Northern Pacific Ry. Co.*, 33 Wash. 697, 74 Pac. 1054; *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Mires v. St. Louis etc. Ry.*, *supra; Saunders v. Southern Pacific Ry. Co.*, 128 Fed. 19; Hutchinson on Carriers, 3d ed., sec. 401.)

J. E. Gyde, for Respondent.

There was no consideration for the contract limiting the liability of defendant from its common-law liability of an insurer.  There must be such a consideration.  (*Lake Erie R. Co. v. Holland,* 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948; *Chicago I. & L. R. Co. v. Hare,* 36 Ind. App. 422, 75 N. E. 867; *Ficklin v. Wabash R. R. Co.,* 117 Mo. App. 221, 93 S. W. 847; *Scott County Mill Co. v. Railroad Co.,* 127 Mo. App. 80, 104 S. W. 924; *St. Louis etc. R. R. Co. v. Pearce,* 82 Ark. 353, 101 S. W. 760; *Southern Express Co. v. Hill,* 81 Ark. 1, 98 S. W. 371.)

When a bill of lading contains restrictions upon the carrier's common-law liability, the court will not presume, in the absence of testimony, that it was done upon a proper and sufficient consideration.  (*McMillan v. Mich. S. & N. I. R. Co.,* 16 Mich. 79, 93 Am. Dec. 208.)   When there is but one contract open and offered to the shipper by a common carrier and no option is given him, a special provision limiting the common-law liability of the "carrier to loss or damage occasioned by wrongful acts or gross negligence" is without consideration.  (*Illinois Cent. R. Co. v. Lancashire Ins. Co.,* 79 Miss. 114, 30 So. 43.)

The clause in the bill of lading limiting defendant's liability will not be held valid on the ground that a reduced rate was intended, no rate being specified, and none being talked of by the parties.  (*Phoenix Powder Co. v. Wabash R. Co.,* 101 Mo. App. 442, 74 S. W. 492, 196 Mo. 663, 94 S. W. 235, 120 Mo. App. 566, 97 S. W. 256; *Kellerman v. Railroad Co.,* 136 Mo. 177, 34 S. W. 41, 37 S. W. 828.)   The contract limiting the liability of the carrier must be strictly construed against the carrier.  (Elliott on Railroads, 2d ed., sec. 1505.)

Where the consideration for limitation of liability is a reduced freight rate, it must appear that both rates of transportation are reasonable.  A rate fixing the common-law liability at twenty per cent more than the limited liability is unreasonable.  (5 Am. & Eng. Enc. Law, 2d ed., 298 (b).)

STEWART, J.—This action is to recover damages for the alleged failure of the defendant to safely transport and deliver to plaintiff certain grain received by plaintiff as a common carrier. In substance the complaint alleges: That the defendant, as a common carrier, received from the Tekoa Mill and Grain Company a certain quantity of wheat and oats, the property of the plaintiff, and thereupon undertook and agreed to safely transport the same from the said town of Tekoa to the town of Wardner, in the county of Shoshone, state of Idaho, and deliver the same at the said town of Wardner to the plaintiff, for a reasonable reward to be paid to the defendant by the plaintiff upon the safe delivery of the said wheat and oats; that the defendant did not safely or otherwise carry or deliver the said wheat and oats, or any part thereof, but, on the contrary, the said defendant has wholly refused to deliver the same or any part thereof to the plaintiff. Wherefore damages are demanded.

The defendant admits receiving the wheat for transportation, but denies that the defendant was engaged in the business of a common carrier for hire as to the wheat and oats described in the complaint. The answer admits that it did not safely or otherwise carry or deliver the said wheat or oats or any part thereof. The real defense is that part of the answer in which the defendant sets up a special contract under which said grain was received and agreed to be transported, in which it is alleged it was stipulated and agreed that no carrier should be liable for any loss or damage to the property described in said bill of lading for causes beyond its control or by fire, and said provisions in said bill of lading apply to the said shipment of grain; that in pursuance of said contract the defendant loaded said grain in a car to be transported to the plaintiff at Wardner, under said tariffs and said bill of lading, and while the same was on the track of the defendant waiting to be transported, without any negligence or want of care on the part of the defendant, and from causes entirely beyond its control, a fire broke out which then and there enveloped said car and said cars upon said track; and thereupon and as soon as said fire was and could

be discovered, and immediately upon being advised that said fire had broken out as aforesaid, the said defendant by its officers and agents made every reasonable and possible effort to save said property and to extinguish said fire, without success; that as a result of said fire, and without any fault or negligence and want of care on the part of the defendant, said grain was badly damaged, and in order to save any part thereof from total loss, immediate disposal was required, and the defendant was compelled to and did dispose of said damaged grain and tendered to the plaintiff the amount realized therefor.

There is no substantial conflict in the evidence in this case. It appears that the Tekoa Mill and Grain Company sold to the plaintiff a consignment of wheat and oats. One L. J. Lauritzen loaded the shipment on the cars of the defendant company and billed it out. He testifies that there was no agreement between himself and the railroad company further than what was on the bill of lading; that the company did not offer to him at the time or previous to such shipment more than one rate. The bill of lading is in the following form:

"The Oregon Railroad & Navigation Co.

"Tekoa, Wash., Aug. 20, 1906.

"Received of Tekoa Mill and Grain Co. the following described freight, in apparent good order, marked and consigned as noted below, contents and value unknown, to be transported to Wardner, Idaho, and delivered in like good order to the consignee at said station, wharf or landing (or if said freight is to be forwarded beyond the lines of this Company, to such company or carriers whose line may be considered a part of the route to the place of destination), on payment of freight charges, together with such charges as shall have been advanced on the same.

"This contract, and the responsibilities of the parties hereto, is limited and controlled by the conditions printed on the back hereof; as also by the terms and conditions of this Company's printed tariffs, which are hereby declared to be an essential part to this contract.

"In order to render this Bill of Lading negotiable, the property shipped thereunder must be consigned to order of owner, without any conditions or limitations, other than the name of the party to be notified of arrival of property. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered to the consignee without requiring the production or surrender of this Bill of Lading.

"THE OREGON RAILROAD & NAVIGATION CO.

"By D. G. LEITCH, Agent,

"T. M. & G. CO., Shipper."

"Consignee, Marks and Destination.

"Ewen McIntosh, Wardner, Idaho.

"No. Packages, 305.

"Articles—Sacks oats.   S. P. car No. 30340.   Cap. 40,000. Wt., 23, 600.

"Weight (subject to correction), 32,800.

"Stamped with rubber stamp.   Claim No. 39641, The O. R. & N. Co."

Upon the back of this bill of lading were indorsed the conditions, among which are the following:

"The goods mentioned in this shipping receipt are received for carriage subject to the following conditions: 1. No carrier or party in possession of any of the property mentioned in this shipping receipt shall be liable for any loss thereof, or damage thereof, or damage thereto, from causes beyond its control, or by floods or by fire or by quarantine, riots," etc.

The witness further testified: "The value of the grain was $340.20. I saw the car the next morning after it was taken away from our mill. It was about a quarter of a mile away from the mill on the Tilma track. When I saw the grain there was none of it on the car. There was a little of it on the ground and a lot outside along the side of the track. Some of it was sacked up. Some of it was laying loose and it was burnt and smoking. . . . . It was not all burned, but I presume it was all more or less smoked. I should think there was about two-thirds of the grain left, but it was all damaged."

The plaintiff testified and among other things stated: "I never received that grain or any part of it, nor did the railroad company ever tender the whole or any part of it to me. The reasonable value of that grain at Kellogg or Wardner was $340 and some cents plus the freight. . . . . At the time the grain was shipped I received a bill of lading signed by the railroad company. . . . . I never received any other paper from the company. I received the bill of lading in a letter from Mr. Lauritzen."

This was practically all the evidence offered by the plaintiff, except as to the running of trains between the point of shipment and destination, and the plaintiff's experience in shipping over the O. R. & N. Railroad Company and the general method of doing business. The defendant introduced the witness, D. G. Leitch, who was the agent of the defendant company at the time the shipment was made, and among other things this witness testifies: "My general duty in shipping a carload of grain from Tekoa to Wardner was to get authority for a car and have it spotted and execute a bill of lading. By the execution of a bill of lading I mean that the railroad company's instructions are that the consignor is to sign a bill of lading and the agent of the railroad company is expected to sign it on behalf of the railroad company. I only remember in a general way the transaction with Mr. Lauritzen. . . . . Well, I furnished them books. Those books were made in sets of fifty in each book. I furnished them to Mr. Lauritzen to have at the mill when he wanted to use them there. He did not want to run to the depot for every bill of lading. Mr. Lauritzen always had a supply of these bills of lading there and I used to check over—he had a supply of these bills of lading during the time I was agent there. I was there for about seven years. . . . . This car was inspected on the 20th in the regular place on the Tilma track. That was the track we used to make up 94's train on. The train was made up and was to leave early in the morning. The train was made up the night before with the baggage and caboose that was to go to the Coeur d'Alene, and was in there on the Tilma track, and on the morning of the 21st, I think

it was, I learned there was a fire; that cars had been burned up, and I went down there and saw the oats lying on the ground. Sacks were burned off of them and considerable of the oats was burned up."

It further appears that the railroad company did not notify the plaintiff of the damage to his grain or ask him what disposition should be made of it, but sacked up and sold it immediately without a public auction or notice that the grain was destroyed. Other evidence was introduced by the company for the purpose of showing the last train that passed over the Tilma track before the fire, and the car inspector testified that he heard a fire alarm about 4 o'clock in the morning of August 22d and looked around for the fire and found that it was up on the Tilma track; that he went up to the sidetrack and got an engine out of the round-house and went up and pulled the cars back; that the fire was under such headway when he arrived that it was impossible to put it out with appliances.

A witness by the name of Stein testified for the defendant in substance as follows: "I am rate clerk in the general freight office at Portland, Oregon. My duties involve handling of rates and tariffs. . . . . Plaintiff's 'Exhibit A' is a bill of lading. I have made a special study of railroad rates. . . . . I am familiar with the different O. R. & N. rates by the reading of the tariff." The witness was then asked this question: "Mr. Stein, suppose that the shipper was to come into the Tekoa station August, 1906, and desired to ship a carload of oats from Tekoa to Wardner, what is the fact as to whether or not there was more than one rate that he could secure?" Counsel for plaintiff objected to this question and the objection was sustained and counsel for appellant then made the following offer: "At this time we offer to prove by this witness that the O. R. & N. Company had in force and effect in August, 1906, two rates for the shipment of grain from Tekoa to Wardner, Idaho. One shipment which moved under the special contract was twenty per cent less than a shipment not moved under the special contract."

The controlling questions in this case are, first, does the bill of lading or contract for shipment introduced in evidence

limit the common-law liability of the appellant company; second, does such bill of lading constitute a contract which exempts the railroad company from liability for loss by fire, not occasioned by the negligence of the company; and third, upon whom does the burden of proof rest as to the contract, its nature, etc.

We think it may now be conceded to be the law, and that such is recognized by the overwhelming weight of authority that a common carrier may limit its strict common-law liability as an insurer in such manner as the law can recognize as reasonable and not inconsistent with sound public policy, but cannot make a contract exempting the carrier from negligence. (4 Elliott on Railroads, sec. 1500, and authorities there cited; *Hart v. Pennsylvania Ry. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. ed. 717; *Railway Co. v. Lockwood*, 17 Wall, 357, 21 L. ed. 627; *Saunders v. Southern Ry. Co.*, 128 Fed. 15; 6 Cyc. 385; 5 Am. & Eng. Ency. Law, 292, 308.)

We think it may also be conceded to be the law by the great weight of authority, that such contract must be reasonable, and must have some consideration to support it and not opposed to public policy. (4 Elliott on Railroads, secs. 1502, 1504, and authorities there cited; 88 Am. St., note 1, p. 91; 6 Cyc. 395, 396; 5 Am. & Eng. Ency. Law, 298, 317.) A railroad company engaged in the business of common carrier is bound, under the common law, to receive and carry within the class of goods it is engaged in carrying, such as are tendered for that purpose; and in the absence of a special contract, to carry them with the full common-law liability of a common carrier. And under the law as established by the great weight of authority, when a shipper goes to a carrier with a view of making a shipment, and the carrier has different kinds of contract, one by which the carrier insures the goods shipped and the other by which the shipper assumes all risk, it is incumbent upon the carrier to show the contract actually made. The mere fact, however, that the railroad company accepts the goods and agrees to ship them is not a sufficient consideration for the waiver on the part of the shipper of the carrier's liability as insurer. There must be some other consideration such as a reduced rate, because

under the common law it is the duty of the railroad company to ship goods tendered and of a class which it carries; and the mere fact that it accepts goods and agrees to ship them is not a consideration which will support a contract whereby the carrier is relieved from its common-law liability for damages resulting to the goods received. We think this doctrine is based upon reason, and while the courts of the United States are very much divided upon the question of the liability of a common carrier, under a special contract limiting liability, and are not uniform in their holdings, yet we are inclined to the opinion that where a common carrier seeks to relieve itself from a common-law liability, it is incumbent upon the carrier to show that there was a consideration for the exemption claimed.

An examination of the decisions of the various courts dealing with this question discloses the fact that as a rule the carrier incorporates in the bill of lading or contract for shipment a provision to the effect that, "As a consideration for the special rate granted, the shipper assumes all risk and the carrier is not to be held liable for losses by fire, etc." An examination of the bill of lading in the case now under consideration contains no such provision. In fact, there is nothing in the contract itself which indicates that any concession was granted to the shipper as a consideration for his agreeing to the exemption of the carrier for loss by fire, etc. The bill of lading contains no rate. It does not show what the regular rate charged by the carrier between the points was, or what the special rate granted to the shipper, by reason of the conditions in the contract, was.

The bill of lading is nothing more than a receipt for the goods to be transported from the place of shipment to Wardner, Idaho, and contains a statement that, "This contract, and the responsibilities of the parties hereto, is limited and controlled by the conditions printed on the back hereof; as also by the terms and conditions of this company's printed tariffs, which are hereby declared to be an essential part to this contract." And upon the back of such bill of lading is the statement that the goods mentioned in this shipping

receipt are received for carriage, subject to the following conditions, namely, that the carrier shall not be liable for any loss thereof or damage thereto by fire, etc.   There is nothing on the face of the contract to show that any concession was granted to the shipper or that there was any consideration for the exemption from loss by fire.   This bill of lading, in our opinion, is nothing more than a receipt for the goods with an agreement to ship them, and the condition is one which is void and of no effect or binding upon the shipper without there is a consideration therefor.

It appears that this was the only contract with reference to this shipment made between the appellant and the respondent, and the proof shows that the appellant did not offer or agree to concede to the respondent a lower rate than the ordinary rate charged for such shipments.   The evidence does not show that the subject was ever mentioned to the shipper or that he had any knowledge of such fact; or that the agent of the company, making such contract, had any knowledge of such fact.   It is true that the appellant placed upon the witness-stand a Mr. Stein, who stated that he was a rate clerk in the general freight office of the company at Portland; that he had made a study of railroad rates; that he was familiar with the different rates of the appellant company by reading its tariff.   He was then asked this question:   "Mr. Stein, suppose that the shipper was to come into the Tekoa station August, 1906, and desired to ship a carload of oats from Tekoa to Wardner, what is the fact as to whether or not there was more than one rate that he could secure?"   Objection was made to this question and sustained; whereupon counsel for appellant made the following offer:   "At this time we offer to prove by this witness that the O. R. & N. Company had in force and effect in August, 1906, two rates for the shipment of grain from Tekoa to Wardner, Idaho. One shipment which moved under the special contract was twenty per cent less than a shipment not moved under the special contract."   This offer was objected to and disallowed by the court.

In thus ruling the court was correct, as it could not affect the plaintiff's right to recover in this action, whatever may have been the rate or tariff established by the company, or whether there was more than one rate or not between such points; unless the shipper (respondent here) had knowledge or had reason to know that there was a different rate, and that a concession was being granted him by reason of his waiving the right to have the carrier insure the safe delivery of the goods shipped. From the offer made counsel states that a shipment, which moved under. the special contract, was twenty per cent less than a shipment not moved under the special contract. Such fact does not appear in the contract. There is no statement in the bill of lading that by reason of the fact that the shipper was granted a twenty per cent less rate than usual; he assumed the risk of his property in transit. Neither is there any evidence to show that such fact was communicated to the plaintiff, or that the plaintiff was advised or had any knowledge of such fact, or that such contract was actually made.

Where a special contract is plead as a defense in an action to recover damages for loss of goods by a common carrier, the burden of proof is upon the carrier to prove the contract and to prove a consideration therefor. In this case it was incumbent upon the railroad company to prove that a contract was entered into between the shipper and the company by which it was agreed, for a consideration, that the company should not be liable for loss or damage to the goods by fire. (5 Am. & Eng. Ency. Law, 317.) The bill of lading offered in evidence does not prove such fact, and there is no oral evidence offered which proves such fact. It is argued, however, that the acceptance by the respondent of the bill of lading was an assent to the provisions contained therein, to the effect that the carrier should be exempt from liability for loss or damage by fire, and was sufficient proof of a consideration. This contention would be correct if the contract itself contained a provision that the exemption was agreed to by reason of the concession granted by the carrier that the shipment was made for a rate less than the ordinary rate;

but this provision is not found in the contract. (*Chicago etc. Ry. Co. v. Calumet etc. Farm,* 88 Am. St. 80, note C.)

Where the contract contains no provision that the exemption is agreed to by reason of a special rate being given, the mere fact that the shipper accepts the bill of lading does not presume that such shipper assents to terms and provisions which are not contained therein. In such case the contract must be proven, and in this case there is no evidence whatever that such a contract was made. The written instrument does not establish it, and there is no oral evidence proving it. (*Phoenix Powder Co. v. Wabash R. Co.,* 101 Mo. App. 442, 74 S. W. 492, 196 Mo. 663, 94 S. W. 235, 120 Mo. App. 566, 97 S. W. 256; *Kellerman v. Railroad Co.,* 136 Mo. 177, 34 S. W. 41, 37 S. W. 828; *George v. Railroad Co.,* 214 Mo. 551, 127 Am. St. 690, 113 S. W. 1099.)

If, then, the appellant has failed to prove the allegations of the answer, to the effect that a special contract was entered into between respondent and appellant, whereby the appellant was exempt from liability from loss or damage by fire, then the defendant is liable under the common law for the failure to deliver the goods received for shipment. Judgment *affirmed.* Costs awarded to *respondent.*

Sullivan, C. J., and Ailshie, J., concur.