J. W. HULL, Respondent, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 1, 1916.

1. CARRIERS OF LIVE STOCK: Damages: Shrinkage. The plaintiff sued the defendant for damages sustained by the negligent delay in the transportation of a carload of hogs from Athelstan, Missouri, to the market at St. Joseph. The defense was the failure of plaintiff to comply with the provisions of the shipping contract relative to giving the defendant notice of the claim as required by law. Held, that the defendant waived formal compliance with the provision concerning the giving of notice of claim within time by accepting and treating the claim as filed in time and as being formally sufficient.

2. ————: Notice of Claim. A failure to reject a claim for the failure to give notice, coupled with a denial of liability on the merits, or with a refusal to investigate, is a waiver of notice.

3. ————: ————. Under the Federal Rule concerning provisions for notice of claims in interstate contracts, such notice cannot be waived. But this provision is not so construed under the law of Missouri regarding intrastate contracts.

Appeal from Worth Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*DuBois & Miller* for respondent.

*Kelso & Kelso* and *John B. Payne* for appellant.

JOHNSON, J.—Plaintiff sued in a justice court to recover damages he sustained from the negligent delay of defendant, a common carrier, in the transportation of a carload of fat hogs from Athelstan, Missouri, to the market at St. Joseph. A jury was waived in the circuit court to which the cause was appealed and when it appeared at the trial that the defense relied upon was the alleged failure of plaintiff to comply with the provisions of the shipping contract relating to giving defendant notice of the claim the parties agreed in open court to restrict the inquiry to that defense and defendant thereby conceded plaintiff's right to recover provided the court should find from the evidence that notice of plaintiff's claim was "given to the defendant as required by law." The court decided this issue in favor of plaintiff, rendered judgment accordingly, and defendant appealed.

The demand of plaintiff is based on excess shrinkage of the hogs caused by the negligent delay in their transportation. The written contract under which the hogs were transported was signed by both parties and was in form and terms in accordance with the tariffs, regulations, etc., filed by defendant with the Public Service Commission.

A rate of $15.40 per car was prescribed in the tar-
iffs for the transportation of live stock in car lots from
Athelstan to St. Joseph, and among the "Rules and
Regulations" relating to intrastate rates was the rule
that "rates provided for herein will apply on ship-
ments made subject to limitation of liability on the part
of the railroad company as common carrier under the
terms and conditions of the current live stock contract
provided by the railroad company. . . . On ship-
ments made without limitation of carrier's liability at
common law 150 per cent of the rates named herein will
be charged, and under this status shippers will have
the choice of executing and accepting contracts for ship-
ments of live stock with or without limitation of liabil-
ity, the rates to be made as provided for herein."

The shipping contract under consideration recited
a consideration of $15.40 for the services defendant un-
dertook to render and contained restrictions on the
common-law liability of defendant among which was
the provision that "no claim for damages which may
accrue under this contract shall be allowed or paid by
the carrier or sued for in any court unless a claim for
such loss or damage shall be made in writing specify-
ing the amount claimed and the nature and extent of
the damage sustained . . . and delivered . . .
to defendant . . . before said animals have been
removed from the yard in which they are unloaded or
mingled with other animals, and in any event within
ten days from the time said animals are removed from
said car."

The hogs were unloaded at the St. Joseph Stock
Yards, December 9, 1913, but plaintiff gave no written
notice of claim for damages until December 29, when
he filed his claim for excess shrinkage of three pounds
per head, on seventy-eight hogs at $7.55 per hundred-
weight.

Under date of January 29, 1914, defendant by its
freight claim agent wrote plaintiff: "These hogs ar-

rived at St. Joseph and were sold on the market December 9th. We do not understand that carriers are liable for damages in those cases where the shipment reaches the market intended. Your claim is declined." Plaintiff then employed lawyers who wrote the claim agent February 11, 1914, requesting settlement of the claim. The agent answered rejecting it on the ground that the hogs "were sold on the market for which they were intended." The lawyers replied pointing out that the excess shrinkage was caused by a negligent delay which prevented the hogs being sold until near the close of the market day when they should have reached the market that morning. Defendant's rejection of the claim was placed solely on the ground of its lack of merit, and not on the failure of plaintiff to give written notice within ten days from the time the hogs were unloaded at destination.

Since this was an intrastate shipment, the rights and liabilities of the respective parties fall within the purview of the Public Service Commission Act, approved March 17, 1913 (see Laws 1913, p. 556, et seq.). That act which was patterned after the Public Service Law of New York was intended to apply to intrastate railroad service similar control and regulation to that outlined in the Interstate Commerce Act and Amendments thereto for the regulation of interstate commerce. [State ex rel. v. Public Service Commission, 259 Mo. 704; Metzger v. Railways, 154 N. Y. S. 789; Railway v. Campbell, 36 U. S. Sup. Ct. Rep. 33.]

Pursuant to this Act defendant filed tariffs and regulations which the Commission received and approved. These tariffs contained two rates for the shipment of live stock from Athelstan to St. Joseph, viz., a limited liability rate of $15.40 per car and a common-law liability rate of $23.10. Plaintiff shipped on the lesser rate and under the law in this State, as it stood before the Public Service law went into effect, the provision in the shipping contract relating to giving notice

of claim being supported by the consideration of a reduced rate and clearly being reasonable, was valid and enforceable. [George v. Railroad, 214 Mo. 551.] Such provisions, if reasonable, are upheld by the Supreme Court of the United States as mere regulations which require the support of no independent consideration but under the stricter rule of the George case that they are in effect limitations of common-law liability they are, nevertheless, recognized as valid if supported by an independent consideration such as a reduced rate.

If defendant had stood on this provision and rejected the claim on the ground that it was presented out of time plaintiff would have no case. But defendant could and did waive formal compliance with the provision for notice by accepting and treating the claim as filed in time and as being formally sufficient.

The cases in this State uniformly hold that a failure to reject the claim for failure to give notice, coupled with a denial of liability on the merits, or with a refusal to investigate, is a waiver of notice. The Federal courts in construing provisions for notice in interstate contracts hold that such notices cannot be waived but this rule is based on the rigid and indomitable purpose of the Interstate Commerce Act to prevent all manner of discrimination and favoritism in the attitude of carriers to shippers, a purpose not emphasized, and so far as we are informed, not even referred to in our Public Service Commission Act. We do not regard this Federal rule which pertains to a purpose peculiar to the Interstate Commerce law as one we should allow to overturn a settled rule long recognized in the jurisprudence of this State. If this case involved an interstate shipment we would apply the Federal rule, but since it does not, the rights of the parties must be governed by the laws and juridical policies of this State.

The judgment is affirmed. All concur.